[Civ. No. 13746. Second Dist., Div. Three. Dec. 8, 1944.]

THE HANCOCK OIL COMPANY OF CALIFORNIA (a Corporation) et al., Respondents, v. W. L. HOPKINS et al., Appellants.

Schauer, Ryon & McMahon and Robert W. McIntyre for Appellants.

Pease & Dolley for Respondents.

SHINN, Acting P. J.—Plaintiffs, lessees under an oil and gas lease, brought this action to enjoin defendants, their lessors, from declaring a forfeiture of the lease for failure to

pay landowner's royalties to defendants. The judgment was in favor of plaintiffs. It ordered plaintiffs to pay to the clerk of the court all landowner's royalties accruing under the lease and enjoined defendants from declaring a forfeiture of the lease for failure to pay royalties, pending the final determination of another action then pending in which third parties claimed title to the demised land and the royalties. Defendants appealed from the judgment.

The lease was entered into December 18, 1936. Wells were drilled and brought in, with production which proved the land to have great value. All royalties were paid to defendants until January, 1941, when plaintiffs received a letter from a Mr. Schaeffer, attorney for Independent Distributing Company, notifying them that his client claimed to be the owner of the land and would hold plaintiffs accountable for all royalties payable under the lease. It was not stated in this letter whether Independent Company claimed to have been the owner at the time the lease was made. Plaintiffs answered the letter, to the effect that they would have to continue to pay royalties to defendants, and sent a copy of the letter and

their reply to defendants. Plaintiffs received a second letter from Mr. Schaeffer stating that an action had been commenced by Independent against defendants herein, asserting title to the land and the royalties as of the date of the lease and at all times thereafter. Upon request of plaintiffs, defendants furnished plaintiffs a copy of the complaint of Independent and shortly thereafter were advised by plaintiffs that it would be necessary to impound the royalties until the claims of Independent were disposed of. On February 27, 1941, defendants gave plaintiffs notice that they were in default in the payment of royalties for the month of January and that unless the default should be remedied within sixty days thereafter the lessors would terminate the lease in accordance with the provisions thereof. Plaintiffs then filed a suit in interpleader against defendants herein and Independent, paid into court royalties for the months of January, February and March, and ever since have deposited with the clerk all royalties accruing under the lease. The present action also was instituted seeking an adjudication of the rights of plaintiffs and defendants under the lease and an injunction against a forfeiture of the lease for nonpayment of royalties. In the interpleader action a demurrer of the defendants herein was sustained without leave to amend and judgment was entered in their favor. Plaintiffs appealed from that judgment. That appeal and the one in the instant case were on the calendar of this court at the same time. Inasmuch as an affirmance of the judgment in the interpleader action would have made it necessary for plaintiffs herein to continue to pay royalties to defendants or to resist a claim of forfeiture for failure to make payment, submission of the present appeal was deferred pending a final determination of the appeal in the interpleader action. The judgment in that action has been reversed by the Supreme Court (*Hancock Oil Co.* v. *Hopkins* (1944), 24 Cal.2d 497 [150 P.2d 463]) and it has been finally determined that upon the facts alleged in the complaint therein plaintiffs have a right to interplead their lessors and the third party claimant, Independent Company.

Although a judgment on the merits in the interpleader action, when it is rendered, will determine the conflicting rights to the royalties, the question whether the failure to continue royalty payments to defendants furnishes the latter with a ground for termination of the lease will not have been

determined. That question is before us and calls for a construction of paragraph 17 of the lease, which reads as follows: "If it should hereafter appear that the lessor, at the time of making this lease, owns a less interest in the demised premises than the fee simple estate or the entire interest in the oil and gas under the demised premises, then the rentals and/or royalties accruing hereunder shall be paid to the lessor in the proportion which its interest bears to the entire fee simple estate or to the entire estate in said oil and gas." The trial court held that upon the facts alleged in the complaint, the substance of which we have stated, the lessees are justified in withholding royalty payments until a determination of the adverse claims thereto asserted by Independent Company. The parties agree that the case turns upon the meaning to be given to the word "appear" as used in the quoted paragraph—whether it justifies action from appearances or only from proven facts. "Appear" is synonymous with "seem" (Bouvier, 1926). It may mean "have the semblance or aspect of being; seem or seem likely; without implying reality or unreality" (Funk & Wagnall's New Standard Dictionary, 1940), or it may mean "to be known as a subject of observation or comprehension, or as a thing proved; to be obvious or manifest" (Webster's New International Dictionary, 1929). In *Lecklieder* v. *Chicago City Railway Co.* (1912), 172 Ill.App. 557, the court said: "The word 'appears' is commonly used in two senses: in one sense it has the same meaning as manifest, obvious or true, but in another sense it means only seems or probably true. In legal documents such as orders of court, etc., and among lawyers it is commonly used as having the first of these meanings, such as in the phrase 'it appears to the court,' but to the layman the expression 'it appears to me.' ordinarily carries no other significance than 'it seems to me' in the sense that it is probable or likely." A more apt statement and one which better illustrates the meaning of the word as it is commonly used is found in *Rice* v. *Palmer* (1906), 78 Ark. 432 [96 S.W. 396], as follows: " 'If it shall appear that a majority,' etc., is the language employed. The Century Dictionary gives six definitions of the word 'appear'; comprehending all shades of meaning attached to it and none of them conveys the idea of judicial or final determination or decision, but all convey the thought of the apparent, the obvious, *that which is to be seen at first sight.*" (Italics ours.) The

italicized words, we think, define "appear" as the parties used it in the lease. The trial court found that defendants, in entering into the lease, used the word in its ordinary or popular sense as meaning "seem" or "seem likely" and not in its technical or legal sense as meaning "appear by final judgment." While the word may be used correctly to denote something proved, it is ordinarily used in the sense of denoting "that which is to be seen at first sight."

The court did not err in taking the word in its ordinary and popular sense. There was nothing before the court indicating that the parties used it in a technical sense or that it had acquired a special meaning by usage. (Civ. Code, § 1644; Code Civ. Proc., § 1861.) This conclusion is fortified by a consideration of the purposes for incorporating paragraph 17. We must, of course, look to the instrument in which the word was used rather than to lexicographers in determining the sense in which it was used. Defendants represented the entire ownership as lessors and they were to receive the entire royalty. Plaintiffs were furnished a policy of title insurance of their leasehold, based upon the ownership of the land by the lessors. No exceptions as to ownership were noted in the policy. Plaintiffs were admittedly bona fide purchasers of their leasehold interest. Even the Independent Company recognized this. As to the several claimants of royalties, plaintiffs had a right to occupy and develop the land upon the terms stated in the lease; the consideration inuring to them under the lease was the share of oil and gas which they retained after paying the royalty. The amount of royalty was fixed. It was payable to defendants so long as they retained the right to receive it, but if someone else established a right to be paid the royalty, plaintiffs' obligation would run in his favor and their obligation to defendants would cease. Under no theory would plaintiffs be required to pay royalty to defendants after it had been determined that someone else was entitled to receive it. This would hold true if defendants lost a part only of the royalty, for they would then share in proportion to the interest which they retained. It was not necessary to provide for such contingencies in the lease. Under these circumstances paragraph 17 was incorporated in the lease. If its only purpose was to provide that the royalty would be prorated between defendants and any other person or persons who might establish a right by final judgment, it

would have failed utterly to provide any protection to the lessees in the contingency which now confronts them. Five wells had been brought in prior to the trial of the action in November, 1941. The royalties have been impounded since January, 1941, and now amount to more than $112,000. After nearly four years of litigation nothing has been finally determined, so far as we are advised, except plaintiffs' right to interplead the various claimants to the royalty. Paragraph 17 was requested by plaintiffs and it seems altogether reasonable that the intention was to protect the lessees against the possibility of having to pay royalty twice. It may be doubted that the lessors would originally have insisted upon terms which would have compelled the lessees to take that risk, and it would seem even more unlikely that the lessees would have agreed to it. Under the construction contended for by defendants any sum paid to them as royalty during the course of the litigation would be lost to plaintiffs should title to the land and royalties be finally determined to be in third parties. The word "appear" must be given a meaning which would lead to a reasonable result rather than to one which would be unreasonable. If the lessees and not the lessors were to suffer the loss in the event the lessors' title should prove unsound, we would expect to find so unusual an undertaking expressed in explicit terms. The definition of "appear" for which defendants contend would lead to a confused result. Defendants' obligation "If it should hereafter appear" etc. is stated in the following language: "then the rentals and/or royalties accruing hereunder shall be paid to the lessor in the proportion which its interest bears to the entire fee simple estate or to the entire estate in said oil and gas." If the Independent Company, in the action which it has brought, should finally prevail, the judgment no doubt would cover royalties accruing after January, 1941, when plaintiffs were first notified of the claim of title. Defendants in the meantime would have received all of the royalty although they would have been entitled to none or perhaps only a portion of it. Clearly this would not be within either the letter or the spirit of the agreement. And finally, we might add that the history of the litigation between the parties, in which no ultimate result has been reached upon any of the matters in issue, fairly demonstrates the correctness of the trial court's interpretation of the lease. If plaintiffs had been obliged to continue the roy-

alty payments since January, 1941, and should later be compelled to pay the same amount to Independent Company, defendants, under their construction of the lease, would be under no obligation to reimburse plaintiffs. But, as we have said, if the parties contemplated such a strange and unusual arrangement, they would no doubt have expressed that intention specifically and would not have permitted it to rest upon the tenuous definition of a single word in the lease.

We have not overlooked the argument of defendants that the first letter sent to Mr. Schaeffer by Mr. Morgan on behalf of plaintiffs amounted to a construction of the disputed term by the parties. The court was justified in believing that the letter was written without knowledge as to the nature of the claims asserted by the Independent Company. After plaintiffs learned of the institution of the suit claiming ownership, the matter was given more careful consideration and plaintiffs withheld payment of further royalties to defendants. This was purely an evidentiary matter, as to which the trial court reached a satisfactory conclusion.

Defendants challenge the finding to the effect that in executing the lease they used the word "appear" as meaning "seem" or "seem likely," contending that the finding is not supported by the evidence. Since we hold with plaintiffs as to the meaning of the word, the finding as to the intentions of defendants becomes immaterial.

There is, however, another finding which has no support in the evidence. It reads as follows: "No evidence having been introduced by defendants in support of their allegations that the claim of Independent Distributing Company is without foundation in fact or law and that said claim is without right, the court finds that it is not true that the claim of Independent Distributing Company is without foundation in fact or law and it is not true that said claim is without right." The judgment is otherwise supported by the findings and the one we have quoted was not within the issues. It is true that defendants by their answer alleged that the claims of the Independent Company were wholly without right, but this was not in response to any allegation to the contrary in the complaint. The court was not called upon to do more than interpret the lease and to give judgment accordingly. The finding, being wholly outside of the issues pleaded or tried, could determine nothing as to the justness of the claims

of the Independent Distributing Company. Since it is a nullity, it is not necessary that it be stricken out.

The judgment is affirmed.

Wood (Parker), J., and Fox, J. pro tem., concurred.