[Crim. No. 23948. Second Dist., Div. Five. Mar. 19, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
RESOLUTE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Joseph P. Busch, District Attorney, Harry B. Sondheim and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

William Herbert Hall for Defendant and Respondent.

## OPINION

**KAUS, P. J.**—Bail forfeiture case. The People appeal from trial court orders exonerating bail and denying the People's motion for summary judgment forfeiting bail.[1]

### FACTS

Resolute Insurance Company, defendant in this proceeding, posted bond for Stanley Howard Saltz. In this case (A-428815) Saltz was charged in July 1972, in a two-count information with attempted arson and burglary. Resolute posted a $20,000 bond for Saltz on these charges. Earlier, in February, Saltz had been charged with several felony drug offenses (A-281890) and Resolute had posted a $3,125 bond.

Saltz failed to appear on the drug charges in September 1972; a bench warrant was issued and bail ordered forfeited. Saltz also failed to appear on the charges in this case; a bench warrant was issued and bail ordered forfeited on September 26, 1972. Resolute was notified on October 4.[2]

In March 1973, Resolute noticed a motion calendared for March 28 to vacate the forfeiture of Saltz's bond in the drug case (A-281890). The ground of the motion was that Saltz's failure to appear "was excusable and/or was without the connivance or collusion of his bail." Resolute's declaration was attached, stating that the bondsman had traced Saltz to Mexico, where he was arrested by the Mexican army, that he was finally extradited to the United States and that it had cost the bondsman $7,000 to locate him. Also attached were a copy of a letter dated February 5, from the Los Angeles sheriff to the United States marshal in Laredo, Texas, stating, in substance, that California was eager to have Saltz returned, and a copy of a telegram dated February 14, apparently from the United States marshal in Laredo to the sheriff's office, stating that Saltz would not waive extradition.

---

[1]To be exact, the People appeal from "the orders of April 3, 1973 and May 16, 1973, denying the People's motion for a summary judgment, and from the orders of May 16 and May 30, exonerating bail, and from the order of May 16, 1973, denying the People's motion to vacate the order of April 3, 1973." As will appear, the People recognize that if the trial court acted properly on April 3, the orders which followed are proper; if the trial court acted improperly on April 3, the People were entitled to summary judgment under the statutory bail forfeiture and exoneration scheme. (Pen. Code, §§ 1305, 1306.)

[2]Penal Code, section 1305, subdivision (a), requires that the court "must" declare bail forfeited if a defendant does not appear "without sufficient excuse . . . ." and must notify the surety of this fact. A 180-day period within which the surety can attempt to vacate the forfeiture runs from the date the notice of the forfeiture is mailed or entered. In this case it expired on April 2, 1973.

When the drug case bail forfeiture came up for hearing on March 28, Saltz was still in the Laredo jail, and the court continued the matter for 60 days, finding that defendant Saltz was temporarily disabled from appearing.

At this point, we reach the proceedings in this case. On March 19, Resolute noticed a motion set for April 3, to vacate the forfeiture. The notice of motion was signed by Resolute's attorney; the supporting documentation consisted of Xerox copies of all the paper work attached to the notice of motion in the drug case.[3]

On April 3, 1973, Resolute's motion to vacate the bond forfeiture and to exonerate the bond was denied. The court granted a "temporary disability"[4] for a period of 60 days, calendaring the matter for further hearing on May 31. The People's motion for summary judgment (*supra*, fn. 1) was denied.

On May 4, the People noticed a motion for summary judgment to declare a bond forfeiture and to set aside the April 3 temporary disability order. This motion was denied, and, Saltz having been retrieved by the sheriff on about May 1, on May 16, Resolute's motion to set aside the forfeiture and exonerate bond was granted, subject to payment of reasonable county costs. Costs were determined to be $1,488, which Resolute paid; the bond was exonerated.

## DISCUSSION

This case involves section 1305, subdivision (a), of the Penal Code, dealing with bail forfeitures. The section provides that if a defendant without sufficient excuse fails to appear in court, bail "must thereupon be declared forfeited, . . . ." The statute then provides that if the surety and the defendant appear within 180 days, under certain circumstances bail may be reinstated or the forfeiture of bail discharged.

The statute also provides for the situation in which the defendant does

---

[3]The People requested that the record be augmented with the superior court file so that this court could see for itself that the signatures on the declarations were not originals.

[4]Section 1305, subdivision (a), requires, as we will discuss, that to discharge a bond forfeiture, the surety must produce the defendant, unless the defendant is permanently unable to appear. The court may find that the defendant is temporarily disabled and make an order accordingly, thus extending the time within which the surety may have the bond forfeiture vacated.

not appear within 180 days, through no fault of the surety. If the surety makes a motion within the 180-day period, which motion can be heard up to 30 days later, and "it is made to appear to the satisfaction of the court that the defendant is temporarily disabled" from appearing, the period of disability is deducted from the 180 days. Also, the court can set a reasonable time within which to produce the defendant and that time too is not deemed part of the 180 days.

In brief, unless a defendant is "permanently unable to appear in court," if the surety wants a bail forfeiture vacated and bond exonerated, he must produce the defendant within 180 days, exclusive of disability or retrieval time.

This People's appeal involves solely the quality of the supporting papers submitted by defendant Resolute in support of the April 3 motion to vacate the bond forfeiture. To summarize their contentions, they claim to be aggrieved because the notice of motion did not state grounds to support the requested relief—exoneration of bond; the attachments to the notice of motion were Xerox copies of the attachments to the notice of motion in the drug case; the surety's declaration constituted incompetent evidence; and there was no evidence that defendant Saltz could not be produced in time for the April 3 hearing. Finally, these arguments are restated in terms of the court's lack of jurisdiction to grant relief, because of the time limits set forth in section 1305, subdivision (a), which we will discuss below.

*Grounds for Relief*

Penal Code section 1305, subdivision (a), provides that "no order discharging the forfeiture of the undertaking . . . shall be made without opportunity for hearing and the filing of a notice of motion for such order setting forth the basis for relief, . . . in compliance with the provisions of Section 1010 of the Code of Civil Procedure." That section provides, as relevant, that notices "must be in writing, and the notice of a motion, . . . must state . . . the grounds upon which it will be made . . . ."

The People contend that Resolute did not comply with section 1010 because the caption on Resolute's March 19 notice of motion reads: "*Notice of Motion to Vacate Forfeiture and Exonerate Bond and for Judicial Notice*," and, admittedly, it was not entitled to exoneration at that time. The contention is without merit. The People confuse the requirement that the "grounds" for relief be stated with a novel

requirement that the relief sought not exceed that to which the moving party is entitled.

It is, apparently, the People's position that—other defects in the moving papers aside—if Resolute had captioned the notice of motion, "Notice of Motion Re Exoneration of Bond to Grant Temporary Disability," the motion would have been properly before the court, but absent such a designation, the court had no jurisdiction to grant a temporary disability. The People are mistaken. If, as here, the grounds are properly set forth, the surety is entitled to whatever relief is appropriate in the circumstances. (*People* v. *Pugh,* 9 Cal.App.3d 241, 251-252 [88 Cal.Rptr. 110]; see *People* v. *United Bonding Ins. Co.,* 12 Cal.App.3d 349, 354-355 [90 Cal.Rptr. 714].)

*Non-Collusion Declaration*

■ Among the documents filed was a "Non-Collusion Declaration," stating, in substance, that Resolute did not collude or connive with defendant Saltz to jump bail. The People contend that this declaration is invalid because it fails to state the date and place that the declaration was executed. (See Code Civ. Proc., § 2015.5.)

Again, the People elevate form over substance. The notice of motion filed by Resolute consisted of a package of papers: the notice of motion, discussed above; a declaration, under penalty of perjury, that defendant failed to appear on the appropriate date:

"I DAN MAJORS, under penalty of perjury declares as follows:

"That we are surety in the above entitled action, whose Bond was ordered forfeited on 9-26-72 by reason of Defendants failure to appear on that date;

"SEE ATTACHED

"That Surety did not willfully disobey the orders of the above Court; that defendants failure to appear as aforesaid was without the knowledge or consent of the bail." The "ATTACHED" was the surety's affidavit concerning his pursuit of defendant Saltz, and the correspondence between the U.S. marshal and the sheriff, noted above. This was followed by the challenged "Non-Collusion Declaration."

It is at least arguable that the "SEE ATTACHED" document, signed and dated in Los Angeles under penalty of perjury, encompassed the undated "Non-Collusion Declaration." In any event, assuming—and we do not so decide—that the "Non-Collusion Declaration" counted for naught, the declaration is repetitious of the surety's sworn statements in the "Surety's Declaration" that he did not wilfully disobey the orders of the court and that defendant's failure to appear was without the knowledge and consent of the surety. Section 1305 of the Penal Code does not demand repetition.

*Competent Evidence*

■ The People next contend that Resolute's declarations in support of the motion decided on April 3d do not contain sufficient competent evidence to justify the "temporary disability."

The point has no merit. The People want us to fly-speck Resolute's moving papers with the same severity with which we are bound to examine the documentation adduced in support of a successful motion for summary judgment in a civil trial. (*Dugar* v. *Happy Tiger Records, Inc.,* 41 Cal.App.3d 811, 817 [116 Cal.Rptr. 412].) They overlook, however, that on April 3 the court did not discharge the forfeiture of Resolute's undertaking, but merely declared itself satisfied that because of Saltz's detention in Texas, he was temporarily unable to appear for a period of 60 days. The language of section 1305 of the Penal Code is significantly different with respect to the quantum of evidence which the surety must produce to discharge the forfeiture of its undertaking after actual appearance of the defendant and the quantum necessary to support the type of order challenged on this appeal. The section provides that to obtain a complete discharge of forfeiture on the defendant's appearance, the surety must "*show*" the necessary facts to the satisfaction of the court; on the other hand, to obtain temporary relief, it is only necessary that "*it is made to appear* to the satisfaction of the court that the defendant is temporarily disabled . . . ." (Italics added.)

We do not believe that the Legislature's use of different words was inadvertent. The word "show" is synonymous with "establish" or "prove." (*People* v. *Davenport,* 13 Cal.App. 632, 637 [110 P. 318]; *Wistrom* v. *Redlick Bros., Inc.,* 6 Cal.App. 671, 676 [92 P. 1048].) "Appear," on the other hand, has been equated with "seem" and " 'have the semblance or aspect of being; seem or seem likely; without implying reality or unreality.' " (*Hancock Oil Co.* v. *Hopkins,* 67 Cal.App.2d 218,

221 [153 P.2d 993].) In *Kind* v. *Superior Court,* 143 Cal.App.2d 100, 102 [299 P.2d 414], the court interpreted section 872 of the Penal Code, which starts as follows: "If, however, it appears from the examination . . . ." It specifically held that by using the word "appears" the Legislature did not intend to require the People "to prove the offense, but only [to produce] sufficient evidence to give a rational appearance that the offense charged had been committed."

Examining Resolute's moving papers with this distinction in mind, we have no doubt that they adequately support the order of April 3.

The surety declared that he learned that Saltz was participating in an international narcotic ring, involving, inter alia, Guadalajara and Nogales, and that he furnished this information to the FBI; that it was the "high reward" offered by him that caused Saltz's arrest in Mexico and his extradition to the United States; and that he spent $7,000 in the effort to cause Saltz's recapture. Copies of a letter from the Los Angeles sheriff to the United States marshal in Texas, and of a telegram from the United States marshal to the sheriff make it clear that Saltz was in jail in Texas.

No useful purpose would be served by discussing every technical objection to this documentation. Undoubtedly, it contained a certain amount of hearsay, but none of the hearsay is essential to support the order. The only point which might be well taken if section 1305 called for strictest proof in "temporary disability" situations is that the copies of the letter from the sheriff to the United States marshal in Laredo, Texas, and of the telegram received in reply are inadequately authenticated as copies of writings "in the custody of a public entity." (Evid. Code, § 1530, subd. (a).)[5] While this technicality might be sufficient to have prevented Resolute from "showing" that Saltz was detained in Texas, we do not believe that the trial court committed reversible error in finding that it had been "made to appear" that Saltz was temporarily disabled from appearing in court in Los Angeles. If there had been any genuine doubt concerning the authenticity of the copy of the sheriff's letter, Resolute could undoubtedly have rectified this particular technical deficiency before April 18 when the court's power to act on the motion filed on March 19 expired.

---

[5]If the copies were properly authenticated as such, the sheriff's letter would probably be self-authenticating (Evid. Code, §§ 1421, 1453.) The telegram would be authenticated under the so-called "reply doctrine." (Evid. Code, § 1420.)

The People contend that there was no evidence that defendant Saltz could not be produced before the 180 days ran out, that is, by April 2. We disagree. The communications between the United States Marshal and the sheriff make clear that Saltz refused to waive extradition as of February 1973. Having in mind the length of contested extradition proceedings and the fact that the district attorney represented the People in *People* v. *Saltz,* as well as in this matter, the trial court could infer that if Saltz had been extradited by April 2, it would have learned of it.[6]

## Other Contentions

The People repeat their argument that the notice of motion did not set forth the grounds of the motion under the rubric that the court had no jurisdiction to grant a "temporary disability," because the 180 days had run. The contention still has no merit. The People acknowledge that the bail forfeiture motion must be made within 180 days but may be heard up to 30 days thereafter—in this case, up to May 2. The hearing was held on April 3.

■ The People contend that the trial court "found" that the temporary disability existed starting April 3, and that under section 1305, the temporary disability must exist during the 180-day period, which expired April 2. The rule is correct, but misapplied here.

The court, at the April 3 hearing, recognized, based on the documents discussed above, that defendant Saltz was being held and had been held in Laredo, Texas. The court then "granted the 60 day disability." The minute order stated that "A Temporary Disability is granted for a period of sixty (60) days from today. . . ." Hearing was set for May 31.

The 60-day period starting April 3 granted by the court was not a determination that defendant Saltz was disabled from appearing in court *starting* April 3, but that the court, pursuant to section 1305, subdivision (a) determined that a "reasonable period of time" was "necessary in order to return the defendant to court upon the termination of the disability, . . ." and set that time at 60 days. The People seem to be contending that the minutes must reflect the court's finding of the exact amount of time, during the 180-day period, that defendant was "temporarily disabled" from appearing in court. We are cited to no

---

[6]In fact, Saltz was not returned until May 1, 1973. This is established by a declaration of the acting head of the extradition section of the district attorney's office, filed May 30, in connection with the People's claim for costs.

authority for this proposition, and, absent a showing of any prejudice whatsoever, decline to establish the absolute rule demanded by the People.

Moreover, when the matter was next heard on May 16, the court made clear that "I didn't say anything as to the disability presently existing April 3rd, but the evidence certainly indicates that it was that on which I acted, and it showed it was a continuing disability from February." Had the court corrected the April 3 order *nunc pro tunc,* the People would not have even a lead-in to an argument.

■ The People also contend that the declarations were all defective, because they were Xerox copies of the declarations filed in the drug case. This contention too is without merit. The court properly treated the documents as originals. Moreover, the court had before it a conformed Xerox copy of the papers filed in the drug case (A-281890), and could see that the papers submitted were identical except for case number, and could take judicial notice of the files in the drug case which did consist of signed originals.

The judgment is affirmed.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied April 7, 1975, and appellant's petition for a hearing by the Supreme Court was denied May 14, 1975.