[No. B004926. Second Dist., Div. Four. May 16, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
ALLIED FIDELITY INSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Robert H. Philibosian and Ira Reiner, District Attorneys, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Dorry H. Plotkin and Jack W. Whitaker for Defendants and Respondents.

OPINION

McCLOSKY, J.—On November 1, 1984, we reversed an order vacating the forfeiture of a bail bond and exonerating the bond on the ground that the trial court had no jurisdiction to make such an order.

On January 3, 1985, the California Supreme Court granted a hearing in this matter and retransferred the case back to us with directions to permit the parties to file supplemental briefs on the jurisdictional issue which this court concluded was dispositive, to permit further additional oral argument unless waived, and "to reconsider the appeal in light of *People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385]; and *People* v. *Surety Ins. Co.* (1976) 55 Cal.3d [*sic*] 197, 201 [127 Cal.Rptr. 451]."

The parties thereafter filed supplemental briefs with this court regarding the jurisdictional issue and have presented further oral argument. As directed, we have reconsidered our initial decision in light of *People* v. *United Bonding Ins. Co., supra,* 5 Cal.3d 898, 906 and *People* v. *Surety Ins. Co., supra,* 55 Cal.App.3d 197, 201. While these cases are distinguishable from the matter before us, we shall conclude that our initial conclusion that the trial court was without jurisdiction to rule on the motion to set aside the forfeiture of bond and exonerate the bond was in error.[1] We shall therefore, address the merits of appellant's contentions.

FACTS

Allied Fidelity Insurance Company (Allied) acting by and through its bonding agency Plotkin Bail Bonds (Plotkin) posted a bail bond in the amount of $12,500 on behalf of Joseph M. Ashley (Ashley), the named defendant in Los Angeles Superior Court case No. A801951.

Said bond was forfeited on September 17, 1982, when Ashley failed to appear. Notice of order of forfeiting bail was thereafter mailed on September 24, 1982.

On December 13, 1982, Plotkin, on behalf of Allied, filed a notice of motion and motion to vacate forfeiture and exonerate bond. In support of

---

[1]*People* v. *United Bonding Ins. Co., supra,* and *People* v. *Surety Ins. Co., supra,* are distinguishable because, unlike the matter before us, they do not involve the issue of whether the trial court has jurisdiction to hear and determine a motion to set aside a forfeiture. Rather, they involve a discussion of the trial court's jurisdiction to order forfeiture of the bond once the bailee has failed to appear.

said motion, the bondsperson declared that defendant Ashley was "in custody in State of Pennsylvania."

With the hearing on the motion being continued, and the time tolled, a number of times, Plotkin, the moving party, filed three additional moving papers,[2] alleging as the ground for each respective motion that it was impossible for defendant Ashley to appear because he was imprisoned in Pennsylvania.

From the bail surety's moving papers, it appears that Ashley was arrested in Pennsylvania on October 7, 1982. He was thereafter sentenced on February 1, 1983. As of that date, his earliest possible release date was June 26, 1983, and his latest possible release date was October 8, 1984. On July 20, 1983, Ashley received an additional Pennsylvania sentence which was to have expired on September 26, 1983. Also disclosed in the bail surety's moving papers is the possibility that Ashley would be extradited from Pennsylvania to New Mexico where he was wanted for forgery and bad checks and the statement that on August 23, 1983, New Mexico sent signed government warrants. The notation made on September 7, 1983, indicates that if the government warrant was not received by 6 a.m. on September 26, 1983, "Ashley to be cut loose on all matters per Judge Douglas Heith."

On September 8, 1983, a date well beyond the 180-day period, Allied's motion to vacate the forfeiture of the bail bond and exonerate the bond was heard and granted. This appeal followed.

## CONTENTIONS ON APPEAL

The People contend (1) that neither Ashley's detention in Pennsylvania nor his anticipated possible extradition from Pennsylvania to New Mexico for contemplated further detention entitles the bail surety to an order vacating the forfeiture of the bail bond and (2) that the People's refusal to obtain Ashley's extradition from Pennsylvania does not entitle the bail surety to any relief.[3]

We shall first discuss the issue of the trial court's jurisdiction.

---

[2] It appears that Plotkin filed three additional moving papers out of an abundance of caution. The last of these motions, filed on September 8, 1983, was untimely. This is of no consequence, however, since the other motions were timely filed and sought discharge of the forfeiture and exoneration of the bond on the same ground—Ashley's incarceration in Pennsylvania. As the hearing on the motion had been properly continued in the time tolled to September 8, 1983, (see Discussion *infra*) the information submitted together with the last set of moving papers was properly considered by the trial court.

[3] Respondent Allied did not file its own respondent's brief but adopted the brief filed by respondent Plotkin.

DISCUSSION

I

Penal Code section 1305,[4] subdivision (a) provides in pertinent part: "Such notice of motion [to set aside forfeiture] must be filed within 180 days after such entry in the minutes or mailing [of the notice of forfeiture] as the case may be, and must be heard and determined within 30 days after the expiration of such 180 days, unless the court for good cause shown, shall extend the time for hearing and determination."

Notice of the order of forfeiture was mailed on September 24, 1982. The 180-day period expired on March 23, 1983. The additional 30-day period expired on April 22, 1983. Allied's motion to set aside the forfeiture and exonerate the bond, which was filed in a timely fashion, was not heard and determined until September 8, 1983, a date well beyond the additional 30-day period.

On three separate occasions, the hearing on Allied's motion to set aside the forfeiture and exonerate the bond had been continued and the time tolled. On March 10, 1983, the last of these occasions, the trial court continued the hearing and tolled the time to September 8, 1983. While neither the facts constituting good cause for the continuance nor the reason for tolling the time appear on the trial court's minute order of March 10, 1983, "we must presume that good cause was shown.  ██  A judgment or order of a superior court is presumed to be correct; all intendments and presumptions consistent with the record must be indulged in favor of its orders and judgments. [Citations.]" (*People* v. *Wilshire Ins. Co.* (1976) 61 Cal.App.3d 51, 57 [132 Cal.Rptr. 19].) Presuming also that the time was properly tolled, we conclude that the trial court had jurisdiction to hear and determine Allied's motion on September 8, 1983.

II

The People contend that neither Ashley's detention in Pennsylvania nor his anticipated extradition from Pennsylvania to New Mexico for contemplated further detention entitles the bail surety to an order vacating the forfeiture of the bail bond.  ██  "The determination of a motion to set aside a bail forfeiture is in the discretion of the trial court and is not to be disturbed unless an abuse of discretion appears in the record." (*People* v. *United Bonding Ins. Co.* (1970) 12 Cal.App.3d 349, 353 [90 Cal.Rptr. 714].)

---

[4]All statutory references herein are to the Penal Code.

In *County of Los Angeles* v. *Surety Insurance Co.* (1984) 152 Cal.App.3d 16, 20 [199 Cal.Rptr. 351], this court noted that section 1305 provides for two kinds of relief when forfeiture of the bond has been ordered: "[F]ull relief in the form of actual discharge of the forfeiture, and partial relief in the form of tolling the period of time in which the surety remains eligible to obtain an actual discharge."

Actual discharge of the forfeiture "upon such terms as may be just" is mandated if within 180 days after mailing of the notice of forfeiture (1) "the defendant and his bail appear, and satisfactorily excuse the defendant's neglect or show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail," (2) "the bail should surrender the defendant to the court or to custody" or (3) "it is made to appear to the satisfaction of the court that the defendant is dead or is otherwise permanently unable to appear in court due to illness, insanity, or detention by civil or military authorities, and that the absence of the defendant was not with the connivance of the bail." (§ 1305, subd. (a); see also *County of Los Angeles* v. *Surety Insurance Co., supra,* 152 Cal.App.3d at p. 21.)

Partial relief—tolling of the statutory time within which the surety can obtain actual discharge of the forfeiture—is required if within 180 days after mailing of the notice of forfeiture "it is made to appear to the satisfaction of the court that the defendant is temporarily disabled by reason of illness, insanity, or detention by civil or military authorities and is therefore unable to appear in court at any time during the remainder of such 180 days, and that the absence of the defendant has not been with the connivance of the bail, . . ." When such a demonstration is made, "the period of time during which the disability continues shall not be deemed part of such 180 days. Upon a finding by the court that a reasonable period of time is necessary in order to return the defendant to court upon the termination of the disability, then such period of time, as fixed by the court, shall not be deemed part of such 180 days." (§ 1305, subd. (a); see also *County of Los Angeles* v. *Surety Insurance Co., supra,* 152 Cal.App.3d at p. 21.)

Hence, "unless a defendant is 'permanently unable to appear in court,' if the surety wants a bail forfeiture vacated and bond exonerated, he must produce the defendant within 180 days, exclusive of disability or retrieval time." (*People* v. *Resolute Ins. Co.* (1975) 46 Cal.App.3d 249, 254 [120 Cal.Rptr. 17].)

In its motion, Allied sought actual discharge of the forfeiture and exoneration of the bond on the ground that Ashley was detained by civil authorities.

As the provisions of section 1305 are jurisdictional (*People* v. *United Bonding Ins. Co.* (1969) 272 Cal.App.2d 441, 445 [77 Cal.Rptr. 310]), discharge would have been justified only if Ashley's detention by civil authorities was permanent and if his absence was not with the connivance of the bail. In ordering that the forfeiture be set aside and the bond exonerated, the trial court implicitly made both of these findings.

The People do not challenge the trial court's implied finding that defendant Ashley's absence was not with the connivance of the bail. They maintain only that exoneration was not authorized because Allied failed to demonstrate that Ashley's detention by civil authorities was permanent. We agree.

The Legislature's intent to distinguish between a defendant who is permanently unable to appear in court and one who is temporarily disabled from appearing in court during the remainder of the 180-day period because of detention by civil authorities is apparent from the language of section 1305. In construing the terms "permanently" and "temporarily" we are guided by the fundamental rule of statutory construction that the language of a statute be given its usual and ordinary meaning. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

The word "permanent" means "continuing or enduring without fundamental or marked change." (Webster's New Collegiate Dict. (1979) p. 847.) The word "temporary" means "lasting for a limited time." (*Id.*, at p. 1191.) The word "temporarily" is an adverb which means "during a limited time." (*Id.*, at p. 1191.)

In the insurance contract context, our Supreme Court has stated, " 'Temporary' is a word of much elasticity and considerable indefiniteness. [Citation.] It has no fixed meaning in the sense that it designates any fixed period of time. [Citation.] As commonly accepted, 'temporary' is an antonym of 'permanent.' [Citation.]" (*State Farm Mut. Auto. Ins. Co.* v. *Johnston* (1973) 9 Cal.3d 270, 273 [107 Cal.Rptr. 149, 507 P.2d 1357].)

Allied introduced no evidence establishing that Ashley's detention in Pennsylvania or any potential detention by New Mexico authorities was, or would be, permanent. To the contrary, the information contained in Allied's moving papers established only that Ashley's detention by civil authorities was temporary and that he would be unable to appear during the remainder of the 180-day period.

According to the bond surety's moving papers, Ashley was sentenced in Pennsylvania on February 1, 1983. As of that date, his earliest possible

release date was June 26, 1983, and his latest possible release date was October 8, 1984. In July 1983, Ashley received an additional sentence which was to have expired on September 26, 1983.

Ashley's latest possible Pennsylvania release date has since come and gone. Whether he was in fact released on or before October 8, 1984, or still incarcerated in Pennsylvania is a question about which we do not speculate. Nor do we speculate as to whether New Mexico actually extradited him or whether he is incarcerated in that state or whether his temporary disability has ceased to exist. We conclude only that on September 8, 1983, the trial court abused its discretion in vacating the order of forfeiture and exonerating the bond. Given the evidence before the trial court, Allied was, at the most, entitled to a tolling of the statutory 180-day period in which an actual discharge could be obtained during such time as Ashley's temporary disability continued and for such additional time as was reasonably necessary to return Ashley to the court after his disability terminated.[5] (*County of Los Angeles* v. *Surety Insurance Co., supra,* 152 Cal.App.3d at p. 22.)

### III

At the hearing on the motion to vacate the forfeiture and exonerate the bond, the prosecution made it clear that they wanted Ashley, but had no intention of extraditing him. It was the prosecutor's position that "[i]t is the responsibility of the bonding company to bring him back to court. If he's still in custody, I think the time ought to be tolled until the bonding company can bring him back."

The People contend that their refusal to obtain Ashley's extradition from Pennsylvania did not entitle Allied to have the forfeiture set aside and the bond exonerated. We agree and note that on appeal Allied and Plotkin make no contention to the contrary.[6]

■ While we have already concluded that the trial court abused its discretion in setting aside the forfeiture since there was no evidence to support

---

[5]While Allied at no time asked that the time be tolled, "[i]f, as here, the grounds are properly set forth, the surety is entitled to whatever relief is appropriate in the circumstances." (*People* v. *Resolute Ins. Co., supra,* 46 Cal.App.3d at p. 255.)

[6]Allied and Plotkin's assertion that the "surety had requested, *and had agreed to pay for,* the extradition of Mr. Ashley" finds no support in the record on appeal. (Italics in original.) In fact, at the hearing on the motion to set aside the forfeiture and to exonerate the bond, counsel for the bonding company represented to the trial court that the People had agreed to pay for the extradition. He stated: "I might advise the court that in the beginning the security agreement with the district attorney's office was they would pay the extradition costs even if California wanted them, and they didn't want them under those terms." The record on appeal contains no evidence of such a security agreement, and Allied and Plotkin do not mention it on appeal.

the trial court's implied finding that Ashley was permanently unable to appear, we also note that the prosecution's refusal to extradite Ashley from Pennsylvania did not justify discharge of the forfeiture. "[T]here is no legal authority for the proposition that the mere refusal by the government to extradite a defendant from a foreign jurisdiction operates to excuse the surety of performance and exonerate the bond. Clearly, if the government took some affirmative action which rendered the surety's obligation to have the defendant in court as ordered an impossibility, . . . performance would be excused and the bond exonerated. However, this is not what transpired here." (*People* v. *National Auto. & Cas. Ins. Co.* (1979) 92 Cal.App.3d 481, 483-484 [154 Cal.Rptr. 872].)

The People maintain that the Uniform Criminal Extradition Act as enacted in both Pennsylvania and New Mexico (Pa. Cons. Stat. Ann., tit. 42, §§ 9121-9148 (Purdon) and N.M. Stat. Ann., §§ 31-4-1 to 31-4-30) provides a vehicle by which Allied can lawfully arrest Ashley in either Pennsylvania or New Mexico and take him before the court of the state to be extradited. (Pa. Cons. Stat. Ann., tit. 42, § 9135 (Purdon); N.M. Stat. Ann., § 31-4-14.)

In response, respondents maintain that because Ashley is incarcerated and cannot be arrested he is, therefore, permanently unable to appear.

This argument is without merit. We have already explained that Allied established only that Ashley's detention by civil authorities was temporary and that while Ashley's status of temporary disability continued Allied was entitled to a tolling of the statutory 180-day period. The Uniform Criminal Extradition Act, as enacted in Pennsylvania and New Mexico, still remained available to Allied upon the termination of Ashley's temporary disability.

The September 8, 1983, order vacating the forfeiture of bond and exonerating the bond is reversed.

Woods, P. J., and Arguelles, J., concurred.

A petition for a rehearing was denied June 5, 1985, and respondents' petition for review by the Supreme Court was denied August 14, 1985.