[No. C044702. Third Dist. Nov. 22, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ACCREDITED SURETY AND CASUALTY COMPANY, Defendant and
Appellant.

**COUNSEL**

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Ronald S. Erickson, County Counsel, and Robert A. Muller, Assistant County Counsel, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—Accredited Surety and Casualty Company (Accredited) appeals from an order denying its motions to vacate the forfeiture of a bail bond, and from the summary judgment entered in favor of the People on the forfeiture of that bond. We affirm.

### BACKGROUND RELATING TO BAIL BOND STATUTES

■ As the California Supreme Court recently outlined: "When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. (Pen. Code, § 1305, subd. (a) [unspecified statutory references that follow are to the Penal Code].) The surety that posted the bond then has a statutory 'appearance' period in which either to produce the accused in court and have the forfeiture set aside, or to demonstrate other circumstances requiring the court to vacate the forfeiture. If the forfeiture is not set aside by the end of the appearance period, the court is required to enter summary judgment against the surety. (§ 1306, subd. (a).)" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 [16 Cal.Rptr.3d 76, 93 P.3d 1020], fn. omitted.)

■ "While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature. [Citation.] 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' [Citations.] 'In matters of this kind there should be no element of revenue to the state nor punishment of the surety.' [Citation.] Nevertheless, the 'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.' [Citation.] Thus, when there is a breach of this contract, the bond should be enforced." (*People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at pp. 657–658.) "The surety enters a contract with the bailee which encompasses the risk that the bailee will not appear and has charged a fee which presumably is sufficient to provide a profitable enterprise despite occasional forfeitures of bail . . . ." (*Continental Cas. Co. v. State of California* (1974) 41 Cal.App.3d 259, 262 [115 Cal.Rptr. 868].)

In order to place Accredited's claims in their proper context, we provide an overview of the pertinent statutory provisions, and we review general principles relating to their interpretation.

Section 1305 sets forth the provisions for vacating a forfeiture and exonerating a bond. Section 1305, subdivision (c)(3), the primary provision at

issue in this appeal, provides: "If, outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180-day [appearance] period, the court shall vacate the forfeiture and exonerate the bail."

■ A forfeiture may be vacated under other circumstances as well, and Accredited raises issues relating to three of these provisions. Section 1305, subdivision (d) provides relief from forfeiture in cases of permanent disability if two conditions are "made apparent to the satisfaction of the court," namely, that (1) the "defendant is deceased or otherwise permanently unable to appear in the court due to illness, insanity, or detention by military or civil authorities," and (2) the defendant's absence "is without the connivance of the bail."

Section 1305, subdivision (f) provides: "In all cases where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond . . . ."

Finally, section 1305, subdivision (g) provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond . . . ."

■ Section 1305 "must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture . . . ." (*People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758, 769 [7 Cal.Rptr.3d 887]; see *County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263].) However, the surety company bears "the burden of coming forward with a request [for relief from forfeiture under section 1305] and making the necessary showing within the statutory time frame . . . ." (*People v. American Bankers Ins. Co.* (1991) 233 Cal.App.3d 561, 570 [284 Cal.Rptr. 617].) It is the bonding company's obligation "to establish *by competent evidence* that its case falls within the four corners" of section 1305. (*People v. Ramirez* (1976) 64 Cal.App.3d 391, 398 [134 Cal.Rptr. 511].)

■ " 'The determination of a motion to set aside an order of forfeiture is entirely within the discretion of the trial court, not to be disturbed on appeal

unless a patent abuse appears on the record. [Citations.]' [Citation.] ' "The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." [Citations.]' " (*County of Los Angeles v. Nobel Ins. Co.* (2000) 84 Cal.App.4th 939, 944–945 [101 Cal.Rptr.2d 320].)

### FACTS AND PROCEDURAL HISTORY

On October 29, 2002, Accredited posted a $30,000 bail bond in Sutter County for Robert Franklin Williams. When Williams failed to appear for a scheduled pretrial hearing on November 6, 2002, the court issued a warrant for his arrest.

The following day, November 7, 2002, the court mailed a notice of bail forfeiture to Accredited and its bail agent, Sean Vita Bail Bonds (Vita) and informed them that the forfeiture would become final on May 11, 2003. (See § 1305, subd. (b).)

On April 1, 2003, Vita filed a motion in propria persona on behalf of itself and Accredited to vacate the forfeiture and exonerate the bond, citing section 1305, subdivision (c)(3). As already noted, this provision applies "[i]f, outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case . . . ." The filed motion contained conflicting information, stating at one point that defendant was "in the custody of the Sutter County Jail" and at another point that "defendant was on March 13, 2003, in the custody of the Logan County Detention Center, Russellville, Kentucky, and was released on a $1,000 bond signed by defendant's daughter . . . ." Four paragraphs later, the motion stated that "defendant had been in the custody of the Yuba County Jail from October 26, 2002, to the present[.]"

In the accompanying declaration, Vita stated that after bond was forfeited, he "found out the defendant [*sic*] had my bounty hunters look for [Williams] and they advised me that he had relocated to Kentucky. [¶] On March 19, 2003, my office man[a]ger telephoned the Yuba City Police Department who advised that [Williams] was in custody in the Logan County Detention Center in Russellville, Kentucky. [¶] My office manager then telephoned the Logan County Detention Center in Russellville, Kentucky where they advised her that [Williams] was no longer in custody but had been in custody. . . . [¶] I have spoken to the Sutter County District Attorney's office who has advised that [Williams] has a terminal illness and the District Attorney's Office is not willing to extradite [Williams] back here."

Vita attached a document from the Logan County Detention Center that noted that Williams had been released on a $1,000 surety bond signed by his daughter.

The People opposed the motion to vacate the forfeiture and exonerate the bond, asserting that section 1305, subdivision (c)(3) did not apply when a defendant was in custody in another state. Under those circumstances, the People argued, the relevant provision was section 1305, subdivision (f), which applies when a defendant "is in custody beyond the jurisdiction of the court that ordered the bail forfeited." The People asserted that the requirements of that section had not been met because it had not been informed of defendant's location, nor had it elected not to extradite him prior to his release.

At a hearing on May 2, 2003, the prosecutor explained, "The defendant's been located back in the state of Kentucky. He is apparently terminally ill. I have been talking to his attorney out here. We're trying to obtain the payment of restitution, and when and if we can accomplish that, it looks like we can accomplish that, we'll end up dismissing this case and not bringing him back." The court responded, "Okay. Meanwhile the motion to vacate forfeiture and exonerate the bond is denied." It added, "And I assume that if you receive the money then you can notify the appropriate parties and they can take whatever action they're going to take." The prosecutor agreed. The court's order denying the motion was entered on May 7, 2003.

Accredited and Vita, appearing through an attorney, filed a new motion to vacate forfeiture and exonerate the bond on May 6, 2003, again citing only section 1305, subdivision (c)(3) as authority for this relief. The motion also reiterated in passing that "[i]n addition to [Williams] being in custody in Kentucky, [Williams] has a terminal illness and the Sutter County District Attorneys office is currently not willing to extradite [Williams] back to California."

The People opposed the motion, noting that no new grounds or evidence had been presented. It reiterated that the district attorney had not been informed of Williams's location until after Williams had been released by Kentucky authorities.

On May 13, 2003, while this motion was pending, the prosecutor filed a request to dismiss the underlying criminal case against Williams on the basis that Williams had paid restitution and was terminally ill in Kentucky. The court granted the request, dismissed the action and recalled the warrant the same day.

At the hearing on May 16, 2003, on the motion to vacate the forfeiture, Accredited argued that it had a "stronger equitable argument today regarding

the fact that there's no longer any case pending currently before the court . . . ." In response, county counsel stated that equitable considerations were not part of section 1305, and that Accredited had not met the statutory requirements for relief. He asserted that the dismissal after the fact had no bearing on the first motion for relief or the duplicate second motion. He argued that in neither motion did Accredited establish that Williams was in custody outside the court's jurisdiction or that the district attorney elected not to extradite Williams.

On May 20, 2003, the court denied Accredited's motion to vacate the forfeiture and exonerate the bond.

Summary judgment was entered on the forfeiture on June 12, 2003.

On June 30, 2003, Accredited filed a motion to set aside the summary judgment, discharge the forfeiture and exonerate bail. It cited section 1384, which requires bail to be exonerated if charges against a defendant are dismissed, and section 1305, subdivision (d), quoted in full *ante*, relating to the exoneration of bail when a defendant is permanently disabled and unable to appear in court. It also suggested that it was "prevented from securing [Williams's] arrest on the underlying case because of the actions of the District Attorney" in that the prosecutor had not entered the warrant into the national system as statutorily required.

The county counsel responded by suggesting that Accredited's motion was nothing more than a "veiled motion for reconsideration that fails to meet the statutory requisites." He also noted that Accredited had not sought relief on the basis of permanent disability in its prior motions. He argued that the dismissal of the complaint after defendant's default did not release the bond. (See § 1306, subd. (d).) Finally, he stated that the prosecutor had fully complied with the requisite procedures, and that no equitable relief was available or justified.

The trial court denied Accredited's motion, and this appeal followed.

### Discussion

Asserting a variety of theories, Accredited contends the court erred in denying its motions to vacate the forfeiture and exonerate the bond. As we explain, there was no error.

### I

### *Section 1305, Subdivision (c)(3)*

■ Accredited contends that relief was warranted under the terms of section 1305, subdivision (c)(3). As noted, this provision provides that a court

must vacate the forfeiture and exonerate the bail "[i]f, outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case . . . ." Accredited contends this provision applies because Kentucky authorities had arrested Williams on the underlying case. We conclude that this provision does not apply to arrests made in another state.

■ "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].) "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Accredited contends the clear words of section 1305, subdivision (c)(3) apply here because Williams was arrested on the underlying charges in Kentucky, that is, "outside the county where the case is located." In support of this claim, Accredited relies primarily on two cases, neither of which we find controlling.

Accredited first cites *People v. American Surety Ins. Co.* (2000) 77 Cal.App.4th 1063 [92 Cal.Rptr.2d 216], a case involving the interpretation of section 1305, subdivision (d), the provision that affords relief from forfeiture in the event the defendant is permanently disabled and cannot appear. In that context, the court noted that the provision applies regardless of the jurisdiction in which the defendant is detained and is not limited to detention by California authorities. (*Id.* at p. 1068.) As Accredited acknowledges, this case did not purport to interpret section 1305, subdivision (c)(3). It is therefore of little relevance to the issue before us.

The second case cited by Accredited is likewise of limited value because, although it discussed section 1305, subdivision (c)(3), it did so in a different factual setting. *People v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 812 [71 Cal.Rptr.2d 806] (*Ranger*) involved a nonappearing defendant who was ultimately found in custody in Sri Lanka. The court noted that section 1305, subdivision (c)(3) does not apply when a defendant is arrested "in a foreign nation, as opposed to another county within California *or a sister state.*" (61 Cal.App.4th at p. 818, italics added.) Accredited seizes on this language to urge that section 1305, subdivision (c)(3) applies here, because Williams was arrested in a sister state. However, *Ranger* did not concern a defendant

arrested in another state but instead involved a defendant in custody in a foreign country. The court's passing comment is dicta, not a definitive analysis of the application of the statute to a defendant arrested in another state.

In fact, the interpretation urged by Accredited fails to consider the full statutory scheme for vacating forfeitures.

■ "[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735.)

If forfeiture is available under section 1305, subdivision (c)(3) whenever a defendant is arrested anywhere outside of the county, other portions of section 1305 become meaningless. For example, subdivision (f) grants relief from forfeiture when "a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant . . . ." If relief is available simply by virtue of defendant being arrested outside the county where the case is located, as provided in subdivision (c)(3), subdivision (f) serves no purpose; relief could be provided under subdivision (c)(3) without requiring the additional step of establishing that the prosecutor elected not to extradite.

Our interpretation is actually supported by *Ranger,* the case involving the nonappearing defendant later found in custody in Sri Lanka. The court rejected the claim that section 1305, subdivision (c)(3) would exonerate bail in that situation. "Viewed in isolation, section 1305, subdivision (c)(3) would seem to apply to a defendant arrested anywhere 'outside of the county where the case is located,' including a foreign country. But a reading of section 1305 as a whole shows this was not the Legislature's intent, because a more specific provision of that statute governs cases where the defendant is arrested

in a foreign country." (*Ranger, supra,* 61 Cal.App.4th at p. 818.) That provision, the court held, was section 1305, subdivision (f) (*Ranger, supra,* at p. 818), which, as already noted, applies to " 'a defendant . . . in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location.' " (*Ibid.*) The court found this interpretation "both sensible and fair. If the surety is unable to secure the defendant's attendance due to his detention by a foreign government, and the People are unwilling to take the official steps necessary to obtain the defendant's return, the surety has been effectively precluded by other parties (the People and the foreign government) from fulfilling its promise to bring the defendant before the court." (*Ranger, supra,* at p. 819.)

■ The same rationale applies to a defendant arrested in another state. It is section 1305, subdivision (f) that applies when extradition is an option, not section 1305, subdivision (c)(3). The language utilized in section 1305, subdivision (f) "contemplates the defendant being apprehended outside of California, either in another state or a foreign country, since the term 'extradition' connotes just such a situation. In legal parlance, a criminal defendant awaiting trial and confined in another county within the state is not 'extradited,' he is 'transferred' to the original venue for trial. Subdivision (f), then, would apply 'in all cases' where the defendant is apprehended, is subject to extradition, and extradition is declined by the prosecutor." (*People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791, 795 [113 Cal.Rptr.2d 448].)

■ This interpretation gives meaning to each of what would otherwise be duplicative provisions. Section 1305, subdivision (f), as just described, applies when a defendant is in custody and subject to extradition. Subdivision (g), quoted earlier in this opinion, also involves the possibility of extradition; it applies when a person is "not in custody and is beyond the jurisdiction of the state," is "temporarily detained" by a bail agent "in the presence of a local law enforcement officer," and extradition is declined by the prosecuting authority. (See *People v. Far West Ins. Co., supra,* 93 Cal.App.4th at pp. 795–796.) In contrast, section 1305, subdivision (c)(3), applies in situations in which extradition is not an option, such as when a defendant has been arrested in the underlying case in another California county. If the broad language of subdivision (c)(3) were interpreted as Accredited urges, subdivisions (f) and (g) would amount to surplusage. Those provisions would simply be adding more burdensome requirements to a situation that could be addressed more easily through section 1305, subdivision (c)(3). Such an interpretation cannot be countenanced.

■ Section 1305, subdivision (c)(3) did not provide a basis for relief in this case.

## II

*Section 1305, Subdivisions (f) and (g)*

Accredited contends section 1305, subdivisions (f) and (g) warranted relief from forfeiture. This argument is not persuasive.

Accredited did not raise either of these provisions as a basis for relief in its motions to vacate the forfeiture and exonerate the bond; instead, it put all of its eggs in the section 1305, subdivision (c)(3) basket. Accredited is precluded from raising this new theory for the first time in its appeal. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [60 Cal.Rptr.2d 780].)

Even if we set this procedural problem aside, Accredited has not made the factual showing needed for relief. (See *People v. American Contractors Indemnity* (1999) 74 Cal.App.4th 1037, 1048 [88 Cal.Rptr.2d 572].) As already noted, section 1305 subdivisions (f) and (g) apply in two different situations. Subdivision (f) applies when a defendant "is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition . . . ." Subdivision (g) applies when a defendant "is not in custody and is beyond the jurisdiction of the state" but is "temporarily detained" by the bail agent in the presence of local law enforcement. Clearly, a defendant cannot be both in and out of custody at the same time, but Accredited nonetheless references both provisions.

It appears that Williams was released from custody before the prosecuting agency was informed of his whereabouts. Section 1305, subdivision (f), which requires a defendant to be in custody when the prosecuting agency elects not to prosecute, is therefore inapplicable.

Accredited also did not meet the requirements of section 1305, subdivision (g), as Williams was never "temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and . . . positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury." Although Accredited might well have taken these steps to obtain relief, it did not. (See *People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356–357 [280 Cal.Rptr. 58]; *People v. American Bankers Ins. Co, supra*, 233 Cal.App.3d at p. 568.)

Moreover, at the time of Accredited's first motion to vacate the forfeiture, a decision on whether to extradite Williams had not been made.

Although the prosecutor stated that he was attempting to resolve the underlying criminal case, those negotiations were still in progress. Section 1305 subdivisions (f) and (g) come into play only if "the prosecuting agency elects not to seek extradition." No such determination had been made, and therefore no relief was available to Accredited under these provisions. (See *People v. American Contractors Indemnity, supra*, 74 Cal.App.4th at p. 1048.)

# III

*Section 1305, Subdivision (d)*

Accredited contends the forfeiture should have been vacated under the provisions of section 1305, subdivision (d), which authorizes relief in the event a defendant is permanently disabled. To obtain such relief, a surety must make apparent "to the satisfaction of the court" that "(1) [t]he defendant is deceased or otherwise permanently unable to appear in the court due to illness" and "(2) [t]he absence of the defendant is without the connivance of the bail." (§ 1305, subd. (d).) The requisite showing was not made in this case.

Again, we note that Accredited based its motions for relief solely on section 1305, subdivision (c)(3). It did not mention subdivision (d) of the statute in name or in substance; it only briefly mentioned that Williams was terminally ill, a reference that Accredited contends is sufficient to invoke the statute's provision. We do not agree.

There was no showing that this illness precluded Williams from appearing in court. Unlike the situation in cases such as *People v. Calvert* (1954) 129 Cal.App.2d 693, 694–696 [277 P.2d 834], Accredited did not present any evidence from medical professionals or any other evidence to establish that Williams was unable to appear.

This evidentiary void distinguishes this case from another cited by Accredited, *People v. Resolute Ins. Co.* (1975) 46 Cal.App.3d 249, 254–255 [120 Cal.Rptr. 17], in which the caption of the motion failed to mention grounds discussed in the motion. Under those circumstances, the court concluded relief was nonetheless appropriate. (*Ibid.*) In contrast, the case before us did not involve a simple failure to label a motion properly; rather, there was no evidence presented to support granting relief under section 1305, subdivision (d). Accredited cannot invoke this provision as a basis for relief for the first time on appeal. (*Mattco Forge, Inc. v. Arthur Young & Co., supra*, 52 Cal.App.4th at p. 847.)

## IV

*Section 980, Subdivision (b)*

Finally, Accredited contends its motions to vacate the forfeiture should have been granted because the district attorney intentionally failed to enter the warrant for Williams into the National Crime Information Center (NCIC) system as required by section 980, subdivision (b). Once again, this claim lacks evidentiary support and must be rejected.

Section 980, subdivision (b) provides: "The clerk shall require the appropriate agency to enter each bench warrant issued on a private surety-bonded felony case into the national warrant system [NCIC]. If the appropriate agency fails to enter the bench warrant into the national warrant system (NCIC), and the court finds that this failure prevented the surety or bond agent from surrendering the fugitive into custody, prevented the fugitive from being arrested or taken into custody, or resulted in the fugitive's subsequent release from custody, the court having jurisdiction over the bail shall, upon petition, set aside the forfeiture of the bond and declare all liability on the bail bond to be exonerated."

Again, we note that Accredited did not seek relief under this provision in its motions to vacate the forfeiture, and therefore it cannot raise this issue for the first time on appeal. (*Mattco Forge, Inc. v. Arthur Young & Co., supra,* 52 Cal.App.4th at p. 847.)

Moreover, the record establishes that a warrant was in fact entered in the NCIC. The notes from Kentucky law enforcement state that Williams was in custody on the California charges. Accredited attempts to evade this problem by suggesting that the district attorney removed or otherwise failed to reenter the warrant. Even if we assume that section 980, subdivision (b) applies in such circumstances, Accredited's claim must fail as it did not present any competent evidence that the district attorney in fact removed the warrant. Accredited asked the court to take judicial notice of hearsay to this effect contained in police department records, but the court properly denied that request. (See *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564 [8 Cal.Rptr.2d 552].) Given these circumstances, Accredited did not meet its burden of proof establishing the factual predicate for relief under section 980, subdivision (b). (See *People v. Taylor Billingslea Bail Bonds* (1999) 74 Cal.App.4th 1193, 1200–1201 [88 Cal.Rptr.2d 713].)

In short, there is no evidence to support Accredited's claim that the district attorney did anything to thwart the surety's ability to locate Williams and

surrender him into custody. (See *People v. American Contractors Indemnity Co.* (1999) 76 Cal.App.4th 1408, 1417–1418 [91 Cal.Rptr.2d 301].) The trial court properly denied Accredited's motions to vacate the forfeiture and exonerate bail.

DISPOSITION

The orders and judgment are affirmed. The People are awarded costs on appeal.

Davis, Acting P. J., and Butz, J., concurred.