Filed 8/8/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FINANCIAL CASUALTY & SURETY, INC.,<br><br>    Defendant and Appellant. | A147808<br><br>(San Francisco City & County<br>Super. Ct. No. CPF-15-514546) |

## I. INTRODUCTION

Appellant Financial Casualty & Surety Inc. (Financial Casualty) appeals from an order denying its motion to vacate forfeiture and exonerate a bail bond. Financial Casualty contends that, pursuant to Penal Code[1] section 1305, the trial court lost its jurisdiction over the bail bond by failing to declare a bail forfeiture when defendant failed to appear at his first hearing. Second, pursuant to section 1305, subdivision (d), it argues that performance of the bail contract was rendered impossible because defendant was permanently unable to appear in court after he was deported from the United States.

We disagree that the trial court had no jurisdiction to declare a forfeiture, and conclude Financial Casualty failed to meet its burden of proving defendant had been deported. We find no abuse of the trial court's discretion.

In addition, Financial Casualty contends the court's decision to deny its motion to set aside the People's summary judgment order was error. In support of its claim Financial Casualty argues the trial court erred by ordering summary judgment

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

1

prematurely before it first ruled on appellant's renewed motion to vacate the bail forfeiture. We conclude the lower court properly entered summary judgment, and that Financial Casualty is not entitled to relief under Code of Civil Procedure section 473. Therefore, we affirm the trial court's rulings on all orders.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 2015, defendant Lesman Cruz (Cruz) was charged with various crimes, including a felony and two misdemeanors. The following day, on February 11, 2015, Cruz was denied release on his own recognizance and bail was set at $30,000. He was also ordered to appear on February 18, 2015, for supervised pretrial release (S.P.R.) eligibility report, and on February 26, 2015, for a preliminary hearing. Also on February 11, 2015, Financial Casualty posted a bail bond securing Cruz's release from custody.

On February 18, 2015, Cruz failed to appear in court. At the hearing, Cruz's lawyer explained that he believed "Mr. Cruz got a little bit confused procedurally because his case was referred for S.P.R. and then he bailed out," and two separate court dates had been set. The court decided that in light of the possible confusing circumstances, it would give Cruz the benefit of the doubt and did not forfeit the posted bail.

However, when Cruz again failed to appear in court on February 26, 2015, the court forfeited his posted bail. A notice of forfeiture was mailed to Financial Casualty and the bail agent on March 25, 2015. The notice indicated the end of the appearance period was on September 26, 2015.

On September 24, 2015, Financial Casualty filed a motion to vacate the forfeiture and exonerate bail pursuant to section 1305, subdivision (d), arguing that Cruz was deported to Honduras and thus performance of the bail contract was rendered impossible. At the October 15, 2015 motion hearing, Financial Casualty presented 12 exhibits, identified as Exhibits A through L. However, the court determined that the only admissible evidence was Exhibits F, G, and L, and these exhibits did not prove defendant had been deported.

2

Exhibit G was the declaration of a legal assistant stating she requested confirmation of Cruz's deportation from the Department of Homeland Security (DHS), and referred to Exhibit F as its response. Exhibit F from DHS stated: "This is in response to your letter dated August 5, 2015, in which you seek information about the deportation status of Lesman Orlando Benegas-Cruz. [¶] The subject *departed* from the U.S. to Honduras on June 18, 2015." (Italics added.) The trial court concluded these exhibits did not establish that Cruz had been *deported* as of that date.

Lastly, Exhibit L was a booking sheet from Salt Lake County, Utah, showing that Lesman Venegas-Cruz had been arrested in that county on March 12, 2015, for drug offenses. Also on that booking sheet were probation conditions stating: "Violate no laws. [¶] Defendant to be released to Immigration and Customs Enforcement (ICE). [¶] Defendant may be released early for deportation into the custody of Immigration and Customs Enforcement (ICE); or leave the country voluntarily within 10 days of release. [¶] Do not re-enter the country illegally. [¶] Bench warrant will be issued within 60 days to ensure Defendant does not return or remain in this county or state illegally." As to this exhibit, the court found the "permissive language" in the probation conditions did not allow the court to conclude that Cruz, in fact, had been deported; it only supported the conclusion that Cruz had left the country.

Ultimately, the trial court denied the motion, without prejudice, on the ground that Financial Casualty did not provide sufficient competent evidence to establish that Cruz had been deported. On October 19, 2015, the People were granted summary judgment against Financial Casualty.

On November 23, 2015, Financial Casualty filed a motion to set aside the summary judgment order, vacate the bail forfeiture, and exonerate the bail bond, pursuant to Code of Civil Procedure section 473, subdivisions (b) and (d). In the motion, Financial Casualty asserted that on October 16, 2015, it sent a renewed motion to vacate to the court for filing, which the court clerk mistakenly returned to Financial Casualty's attorney, unfiled, with notification that it would not accept the filing because summary judgment had been entered.

3

On December 28, 2015, the court denied Financial Casualty's motion to set aside summary judgment because Financial Casualty failed to demonstrate that it was entitled to relief under either subdivision of Code of Civil Procedure section 473.

On January 19, 2016, Financial Casualty filed a timely notice of appeal from the lower court's denial of its motion to vacate the forfeiture and exonerate bail on October 15, 2015, and motion to set aside summary judgment on December 28, 2015.

## III.  DISCUSSION

### A.  Motion to Vacate Bail Forfeiture

Bail forfeitures are governed by section 1305 et seq.  The trial court must carefully follow these provisions or its acts may be found to be without, or in excess of, its jurisdiction.  (*People v. The North River Ins. Co*. (2011) 200 Cal.App.4th 712, 717 (*North River*).)  In addition, the law traditionally disfavors forfeitures of bail.  (*People v. United Bonding Ins. Co*. (1971) 5 Cal.3d 898, 906; *People v. Earhart* (1972) 28 Cal.App.3d 840, 844.)  As a result, "Penal Code sections 1305 and 1306 dealing with forfeitures of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture.  [Citation.]" (*People v. Surety Ins. Co.* (1982) 136 Cal.App.3d 556, 561; *People v. Wilshire Ins. Co*. (1975) 46 Cal.App.3d 216, 220.)

Generally, if a criminal defendant out on bail fails to appear when lawfully required to do so, the trial court must declare bail forfeited.  (§ 1305, subd. (a).)  Once bail has been forfeited, the clerk must mail a notice of forfeiture to the surety.  (§ 1305, subd. (b).)  The surety then has 180 days, known as the "appearance period," to bring the defendant into court.  (§ 1305, subd. (c); *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 253 (*Tingcungco*); *North River*, *supra*, 200 Cal.App.4th at p. 717.)

If the defendant appears or is returned to custody within the appearance period, no motion for relief is necessary by the surety.  (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 304-305.)  On the other hand, if the defendant cannot be located, the surety company has the burden of bringing forth a request for relief from forfeiture within the statutory period.  (*People v. Accredited Surety & Casualty Co*. (2004) 132 Cal.App.4th 1134, 1139 (*Accredited Surety*); *People v. American Bankers Ins.*

*Co.* (1991) 233 Cal.App.3d 561, 570.) It is, therefore, the surety's obligation " 'to establish by competent evidence that its case falls within the four corners' " of section 1305. (*Accredited Surety*, at p. 1139, italics omitted; *People v. Ramirez* (1976) 64 Cal.App.3d 391, 398.) Upon a showing of good cause, the surety may seek an extension of the appearance period to a time not to exceed another 180 days. (§ 1305.4; *Tingcungco*, *supra*, 237 Cal.App.4th at p. 253.) If the appearance period, including any extension, elapses without the bail forfeiture having been set aside, the trial court must enter summary judgment against the surety. (§ 1306, subd. (a).)

In the present case, Financial Casualty contends the trial erred when it denied its motion to vacate forfeiture and exonerate the bail bond. To support this contention, Financial Casualty makes two arguments. First, pursuant to section 1305, subdivision (a)(1), it contends the trial court lost its jurisdiction over the bail bond by failing to declare a bail forfeiture when Cruz failed to appear at his first hearing on February 18. Second, pursuant to section 1305, subdivision (d), it argues that performance of the bail contract was rendered impossible because Cruz was permanently unable to appear in court after he was deported.

On appellate review, a trial court's denial of a motion to set aside an order of forfeiture is reviewed under an abuse of discretion standard. (*Accredited Surety*, *supra*, 132 Cal.App.4th at pp. 1139-1140.) " ' "The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." [Citations.]' [Citation.]" (*Id.* at p. 1140; *County of Los Angeles v. Nobel Ins. Co.* (2000) 84 Cal.App.4th 939, 944-945 (*Nobel*).)

### *1. Jurisdiction Under Section 1305*

Section 1305, subdivision (a)(1) provides that the court "shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear . . . ." This requires that: "(1) the defendant must fail to appear for arraignment, trial, judgment, execution of judgment, or

5

when his presence is otherwise lawfully required; and (2) the failure to appear must be without sufficient excuse. [Citation.]" (*People v. National Automobile & Casualty Ins. Co.* (2004) 121 Cal.App.4th 1441, 1447 (*National Auto*), citing *People v. Classified Ins. Corp.* (1985) 164 Cal.App.3d 341, 344.)

Section 1305.1 codifies a limited exception to this general rule. (*National Auto*, *supra*, 121 Cal.App.4th at p. 1450.) It states that, "[i]f the defendant fails to appear . . . but the court has reason to believe that sufficient excuse may exist for the failure to appear, the court may continue the case for a period it deems reasonable to enable the defendant to appear without ordering a forfeiture of bail or issuing a bench warrant." (§ 1305.1.) Thus, the court has the discretion to continue a hearing, and retain its jurisdiction to declare a forfeiture, as long as it has reason to believe that a sufficient excuse exists for the defendant's nonappearance. (*People v. Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 19.)

" 'The theory behind this exception is that "[i]f bail forfeiture is required immediately upon the first nonappearance of a defendant, no matter how valid his reason for nonappearance be, such defendant would be subjected not only to having his bail forfeited but the additional penalty of possibly being required to pay another premium for its reinstatement." [Citation.]' [Citation.]" (*National Auto*, *supra*, 121 Cal.App.4th at p. 1450.)

The determination of whether an excuse is sufficient is within the trial court's discretion and decided on a case-by-case basis. (*People v. Harco National Ins. Co.* (2005) 135 Cal.App.4th 931, 934, quoting *People v. Ranger Ins. Co.* (2003) 108 Cal.App.4th 945, 952, fns. omitted.) In addition, "the test is not whether it has been conclusively demonstrated a defendant had an actual and valid excuse for his nonappearance," rather "the statute requires the court only have 'reason to believe that sufficient excuse may exist for the failure to appear.' " (*People v. Ranger Ins. Co.*, at p. 953, italics omitted.)

We conclude the trial court properly exercised discretion in not ordering bail forfeited at the February 18 hearing. The record clearly demonstrates that Cruz's

attorney had a reasonable explanation for his nonappearance that day. The court concluded that due to the possible confusing issuance of two separate court dates, and the uncommon setting of bail and a referral to S.P.R., it would give Cruz the benefit of the doubt and not forfeit the posted bail. As a result, the court found there was sufficient excuse to Cruz's nonappearance, and refrained from forfeiting bail until Cruz missed his second court date. Accordingly, the trial court retained its jurisdiction over the bond on February 18, 2015, and properly forfeited bail at the subsequent hearing on February 26, 2015.

### 2. Deportation Under Section 1305, subdivision (d)

Alternatively, Financial Casualty contends the trial court erred in denying its motion to vacate the forfeiture and exonerate bail pursuant to section 1305, subdivision (d). It bases its argument on the fact that performance of the bail contract was rendered impossible because Cruz was permanently unable to appear in court after he was deported from the country. In response, respondent contends, and the lower court agreed, that Financial Casualty did not provide competent admissible evidence that Cruz had been deported, and was permanently unable to appear in court.

Under section 1305, subdivision (d), the court must direct a bail forfeiture to be vacated if, within 180 days of the forfeiture, the court finds there is a permanent disability that meets the following two conditions: (1) "The defendant is deceased or otherwise permanently unable to appear in the court due to illness, insanity, or detention by . . . civil authorities;" and (2) "The absence of the defendant is without the connivance of the bail." "[T]here 'is a low threshold of proof' for establishing grounds to either vacate the forfeiture or toll." (*County of Los Angeles v. Financial Casualty & Surety Inc.* (2015) 236 Cal.App.4th 37, 44 (*Financial Casualty*), quoting *People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, 1490.)

"A person may be 'detained' within the meaning of section 1305, subdivision (d), without being in the actual physical custody of civil authorities. 'It is sufficient under this section . . . if it is proven that the defendant was restrained by civil authorities and that the restraint prevents his appearance on the date set for that appearance. [Citation.]'

7

[Citation.]" (*People v. American Surety Ins. Co*. (2000) 77 Cal.App.4th 1063, 1065 (*American Surety*).) Thus, a criminal defendant who is deported out of the country is detained for purposes of section 1305, subdivision (d) when federal statutes prevent his or her return. (*Financial Casualty*, *supra*, 236 Cal.App.4th at p. 45; *American Surety*, at p. 1066.) However, a criminal defendant who *voluntarily* leaves the country does not entitle the surety to an exoneration of the bond. (*American Surety*, at pp. 1063, 1066.)

To vacate a forfeiture and exonerate bail successfully under section 1305, subdivision (d) based on a defendant's deportation, the surety has the burden of showing: "(1) a deportation, (2) the period of time the bailee is deemed inadmissible under federal law, and (3) that the period of inadmissibility would render prosecution improbable based on the totality of the circumstances, including the statute of limitations." (*Financial Casualty*, *supra*, 236 Cal.App.4th at p. 47.)

Here, at the motion to vacate hearing on October 15, 2015, Financial Casualty presented 12 exhibits, identified as Exhibits A through L. However, the court determined the only admissible evidence was Exhibits F, G, and L, and that these exhibits did not prove defendant had been deported. On appeal, Financial Casualty does not argue the admissibility of the remaining nine exhibits and therefore, we will only review Exhibits F, G, and L for the purposes of this decision.[2]

The lower court found that while there was information to suggest Cruz *may* have been deported from the United States, there was "no competent evidence to support that." On appeal, Financial Casualty's argument relies on *Financial Casualty*, asserting that the evidence in the present case was more persuasive even than the evidence presented in *Financial Casualty.*

---

[2] On appeal, Financial Casualty references the "EARM" [Enforce Alien Removal Module data system] case summary," a document not presented to the lower court, and thus not considered during its October 15, 2015 hearing. It would be improper for this court to review whether the trial court abused its discretionary power in denying the surety's motion by evaluating evidence that was not presented below. For that reason, we will not consider the EARM case summary's probative value.

In *Financial Casualty*, the trial court forfeited bail after the defendant, Giovanni Santana, failed to appear for his arraignment. (*Financial Casualty*, *supra*, 236 Cal.App.4th at pp. 40-41.) The surety filed a motion to vacate the forfeiture on the ground that the defendant was permanently disabled because he had been deported to Mexico. (*Id*. at p. 41.) To support its motion, the surety submitted an "Internet print out" that showed a person named "Geovanni Calvo-Santana" was charged with being an "Alien Present Without Admission or Parole" and had been removed to Mexico. (*Ibid*.) Also attached was an exhibit that showed Calvo-Santana was prohibited from entering the United States for 20 years. (*Ibid*.) On appeal, the court found that due to the defendant's deportation and federal statutes preventing his return, he was permanently disabled from appearing. (*Id*. at p. 45.) However, because of the variance in the name of the defendant (Giovanni Santana) and the name on the internet print out (Geovanni Calvo-Santana), the court ordered the case remanded to consider evidence as to whether they were the same person. (*Id*. at p. 48.)

We find that facts in the present case differ importantly from those in *Financial Casualty*. The evidence presented in *Financial Casualty* affirmatively proved the defendant (or at least someone with a similar name) had been deported, and was barred from returning to the United States for 20 years. (*Financial Casualty*, *supra*, 236 Cal.App.4th at p. 41.) The same cannot be said here. The two exhibits relied on here by Financial Casualty, Exhibit L and Exhibit F, were inadequate to prove deportation had occurred, and that the defendant was barred from returning to the United States.

Exhibit L is a booking sheet from Salt Lake County, Utah, which shows that Lesman Venegas-Cruz had been arrested in that county on March 12, 2015, for drug offenses. Also on that booking sheet, were probation conditions that stated in pertinent part that Cruz "*may* be released early for deportation into the custody of Immigration and Customs Enforcement (ICE); *or* leave the country voluntarily within 10 days of release." (Italics added.) Exhibit L does not prove that Cruz had been deported and prohibited from reentering the United States. The exhibit proves only that Cruz had the option

either to leave the United States voluntarily once he was released, or be subject to deportation.

In addition, Exhibit F is a response letter from DHS that states: "This is in response to your letter dated August 5, 2015, in which you seek information about the deportation status of Lesman Orlando Benegas-Cruz. The subject *departed* from the U.S. to Honduras on June 18, 2015." (Italics added.) In this regard, the lower court found, and we agree, that this document also does not prove that Cruz had been *deported* as of that date.

Financial Casualty argues that the word "departed" essentially means ICE deported Cruz, but it does not cite any evidence in the record or to any legal authority to support this conflation. Without more definite evidence showing that ICE deported Cruz, we cannot conclude the trial court abused its discretion. "The determination of a motion to set aside an order of forfeiture is entirely within the discretion of the trial court, not to be disturbed on appeal unless a patent abuse appears on the record. [Citations.]" (*People v. Wilcox* (1960) 53 Cal.2d 651, 656.) " ' "The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." [Citations.]' (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)" (*Nobel*, *supra*, 84 Cal.App.4th at pp. 944–945.) As a result, we affirm the trial court's ruling to deny Financial Casualty's motion to vacate the exoneration of the bond.

### B. Motion to Set Aside Summary Judgment

Financial Casualty also contends the trial court erred in denying its motion to set aside summary judgment pursuant to Code of Civil Procedure section 473, subdivisions (b) and (d). In support of its contention, Financial Casualty argues the trial court prematurely ordered summary judgment because it needed to rule on appellant's renewed motion to vacate forfeiture beforehand. Financial Casualty asserts it was entitled to a reconsideration of the court's October 15, 2015 decision because it filed a renewed

10

motion by sending it overnight to the court on October 16, 2016, after its previous motion had been denied without prejudice.

Under section 1305, subdivision (j), a motion to set aside forfeiture must be "filed in a timely manner within the 180-day period" and "may be heard within 30 days of the expiration of the 180-day period." (*Financial Casualty*, *supra*, 236 Cal.App.4th at p. 43.) In addition, at the request of the surety, the court has the discretion to extend the hearing date beyond the 30-day period in which to decide the matter upon a showing of good cause. (§ 1305, subd. (j).) "[A] court that does not strictly follow these statutes acts in excess of its jurisdiction. [Citation.]" (*Financial Casualty*, at p. 43; *North River*, *supra*, 200 Cal.App.4th at p. 717.)

Here the original motion to vacate forfeiture and exonerate the bond was made by Financial Casualty on September 24, two days before the expiration of the 180-day appearance period. The court heard and decided the motion on October 15, outside the appearance period, but within the 30 days provided for in section 1305, subdivision (j).

At no time did Financial Casualty file a motion requesting to extend the 180-day period up to another 180 days under section 1305.4. The surety was well aware that the compilation of admissible evidence supporting exoneration of the bond because of permanent disability of the defendant may take more than 180 days to complete. In its motion to set aside summary judgment below, Financial Casualty complained in a footnote: "It has been the Surety's experience that the full results from FOIA [Freedom of Information Act] request to ICE for deportation documents can take many months to be fully completed. There is little the Surety can do to speed this process." Maybe so, but in response to such a delay, Financial Casualty could have availed itself of the relief from the 180-day appearance period deadline by filing a motion to extend that time under section 1305.4, which it did not do.

Perhaps recognizing this omission, Financial Casualty argues that because the trial court denied its motion to vacate forfeiture, without prejudice, on October 15, 2015, it necessarily granted permission to file a renewed motion beyond the 180-day appearance period. We reject this conclusion as unsupported either by the record evidence or by any

11

citation to legal authority. There is no showing that the court, in denying the motion without prejudice, intended to grant an extension of the 180-day statutory period under section 1305.4, an extension that Financial Casualty did not even request.

To the contrary, based on section 1305, subdivision (j) and relevant case law, a court must strictly follow the language in section 1305, and failure to do so would cause the court to act in "excess of its jurisdiction." (*Financial Casualty*, *supra*, 236 Cal.App.4th at p. 43; *North River*, *supra*, 200 Cal.App.4th at p. 717.) Here, the appearance period ended on September 26, 2015. Thus, of October 15, 2015, it would have been an act in excess of its jurisdiction for the court to grant an extension. (*People v. Lexington National Ins. Co.* (2007) 158 Cal.App.4th 370, 373 ["Courts have consistently interpreted section 1305 as requiring that a surety move to have the forfeiture vacated within the 180–day period and have found that a court is without jurisdiction to vacate a forfeiture if a motion to vacate is not made within that period."].)

Furthermore, according to section 1306, subdivision (a), "When any bond is forfeited and the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound." (§ 1306, subd. (a).) As a result, it was proper for the court to enter an order of summary judgment on October 19, 2015, because it had denied appellant's first motion to vacate, and there were no other timely motions to consider at the time of the order.

## C. Relief Under Code of Civil Procedure Section 473

Under Code of Civil Procedure section 473 (CCP 473), subdivision (b), "a court may relieve a party or his or her legal representative from a judgment, dismissal, order or other proceeding taken against a party due to 'mistake, inadvertence, surprise, or excusable neglect.' (*North River*, *supra*, 200 Cal.App.4th at p. 717.) "Whether 'section 473 relief is available in the context of [a] bail bond forfeiture proceeding' is a question of law subject to our independent review. [Citation.]" (*Financial Casualty*, *supra*, 236 Cal.App.4th at p. 43; *North River*, at p. 717.) In addition, " '[b]ecause the law strongly

12

favors trial and disposition on the merits, any doubts in applying [CCP] 473 must be resolved in favor of the party seeking relief from default.' [Citation.]" (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 371-372 [*Maynard*]; *North River*, *supra*, 200 Cal.App.4th at p. 718.)

However, CCP 473 " 'does not offer relief from mandatory deadlines deemed jurisdictional in nature. [Citations.]' [Citation.]" (*North River*, *supra*, 200 Cal.App.4th at p. 718; *Maynard*, *supra*, 36 Cal.4th at p. 372.) For example, in *Maynard*, the Supreme Court held errors amenable to CCP 473, subdivision (b) relief include "the issuance of untimely demands for expert witness disclosures [citation], erroneous offers to compromise [citation], inadvertent dismissals [citation], failures to timely respond to requests for admissions under [Code of Civil Procedure] section 2033 [citation], and the untimely filing of cost bills [citation]." (*Maynard*, at p. 372.) In addition, CCP 473 typically does not apply "to a party's failure to comply with the applicable limitations period in which to institute an action," or "mandatory deadlines deemed jurisdictional in nature. [Citations.]" (*Maynard*, at p. 372.)

Here, Financial Casualty seeks to invoke CCP 473, subdivisions (b) and (d) for relief from a jurisdictional bar. The only mistake that Financial Casualty's attorney made below was in not moving for an extension of the appearance period to allow it more time to procure admissible and competent evidence to prove Cruz had been deported. Any such mistake is not a permissible use of CCP 473 (*Maynard*, *supra*, 36 Cal.4th at p. 372.) As a result, CCP 473, subdivision (b) is not a valid ground for relief for Financial Casualty in this case.

Likewise, relief under CCP 473, subdivision (d) was not available to Financial Casualty. That subdivision states: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order." (CCP 473, subd. (d).) To this point, Financial Casualty argues that its renewed motion to vacate, which it sent to the court for filing on October 16, 2015, three days before summary judgment was

13

granted, was mistakenly returned unfiled even though it had been received by the clerk before the court entered summary judgment on October 19, 2015.

We conclude the lower court did not err in rejecting Financial Casualty's motion. Financial Casualty's renewed motion was untimely and outside of the statutory appearance period. Thus, the court could not have considered the motion even if it had been filed upon its receipt.[3] Therefore, Financial Casualty is not entitled to relief under CCP 473, subdivisions (b) or (d). There was no timely filed motion to set aside the forfeiture, and CCP 473 cannot be used to create jurisdiction where there is none. The lower court's ruling in denying Financial Casualty's motion to set aside summary judgment is affirmed.

## IV. DISPOSITION

We affirm both the trial court's denial of Financial Casualty's motion to vacate the forfeiture and exonerate the bond; as well as its motion to set aside summary judgment.

---

[3] We note, too, that the trial court record does not include a copy of the renewed motion. As a consequence, Financial Casualty does not explain substantively how the materials submitted in connection with that second motion differed from its original motion, or how it was likely that the trial court would have granted it, even absent the jurisdictional impediment to doing so.

14

_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
STREETER, J.


A147808, *People v. Financial Casualty & Surety, Inc.*

Trial Court: San Francisco Superior Court

Trial Judge: Hon. Ernest H. Goldsmith

Counsel for Appellant: E. Alan Nunez and John M. Rorabaugh

Counsel for Respondent: Dennis J. Herrera
City Attorney

Cheryl Adams
Chief Trial Deputy

Diana Rosenstein
Deputy City Attorney

A147808, *People v. Financial Casualty & Surety, Inc.*