Filed 12/20/24  P. v. United States Fire Insurance Company CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>UNITED STATES FIRE INSURANCE COMPANY,<br><br>    Defendant and Appellant. | F087586<br><br>(Super. Ct. No. 22-CR-000846)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Robert B. Westbrook, Judge.

Law Office of John Rorabaugh and John Mark Rorabaugh for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Serenity M. Wang, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

A surety on a bail bond appeals from an order denying its motion to vacate forfeiture and exonerate bail.  The surety argues the trial court was required by Penal

Code section 1305, subdivision (a)(1)[1] to declare the bail bond forfeited when the defendant was not personally present at a July 18, 2022 pretrial hearing and, having failed to do so, the court was without jurisdiction to declare a forfeiture at a September 6, 2022 hearing where neither defendant nor his attorney were present. This argument relies on the principle that, "[i]f the court fails to declare a forfeiture *at the time* of the defendant's unexcused absence, it is without jurisdiction to do so later." (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 710 (*Safety National*).)

The main issue before us is whether, at a May 23, 2022 hearing, the trial court required "the defendant's presence in court" for the July 18, 2022 hearing. (§ 1305, subd. (a)(1)(D).) At the May hearing, the trial court accepted the defendant's section 977 waiver of his right to be present before it scheduled the July pretrial hearing. The court did not specifically order the defendant to be personally present at the July hearing. The minute order from the May hearing included the preprinted phrase "**Def. ordered to appear** / **excused**" and the clerk circled the word "**appear**." We conclude this language in the minute order is ambiguous—it could mean the defendant was ordered to be personally present at the July hearing or it could mean he was allowed to appear through his attorney of record or by being personally present. Based on the section 977 waiver, the absence of a specific order to be personally present, and other factors, we resolve the ambiguity by concluding the defendant was allowed to appear through his attorney. As a result, the court was not required to order bail forfeited at the July hearing and it had the jurisdiction to order bail forfeited at the September hearing when the defendant or his attorney were not present.

Therefore, the trial court correctly denied the surety's motion to vacate the forfeiture and exonerate bail. The summary judgment on the bail bond is affirmed.

---

[1] Undesignated references to a statutory provision are to the Penal Code.

2.

## FACTS AND PROCEEDINGS

In February 2022, a criminal complaint was filed charging defendant Steven Jay Lozano with attempted murder of an officer of the Ceres Police Department, assault with a deadly weapon—specifically, a vehicle—and other offenses. The complaint also alleged several enhancements relating to convictions in November 2001 and February 2003.

On May 12, 2022, Mark Garcia Bail Bonds, acting as the agent for United States Fire Insurance Company (collectively, Surety) posted a $200,000 bail bond for Lozano's release. The bail bond stated Lozano was ordered to appear in Stanislaus County Superior Court on May 23, 2022, at 8:30 a.m.

### May 23, 2022 Hearing

The certified court reporter's transcript of the May 23, 2022 hearing sets forth the following as the entirety of the oral proceedings that occurred in Lozano's case that day:

"THE COURT: I'll call the case of Steven Lozano, CR-22-000846. Mr. Lozano is present. This is an AID matter. [¶] And you are substituting in and making a general appearance today?

"MR. WASHINGTON: Yes, Your Honor.

"THE COURT: All right. So AID will be relieved. You are substituting in and making a general appearance. And Mr. Bills has the matter for the People. [¶] And, I'm sorry, what is your last name?

"MR. WASHINGTON: Washington.

"THE COURT: Thank you very much. So I show Mr. Washington substituting in. [¶] Mr. Washington has submitted a 977, which I will accept and have filed. [¶] Now, this is no longer a conflict case. It will go back to Department 8, which is right across the hall. [¶] Did you have a date in mind to return?

"MR. WASHINGTON: I'm available the 18th.

"THE COURT: Okay. So Monday July 18th. [¶] Is that okay with you, Mr. Lozano?

3.

"THE DEFENDANT:    Yes, ma'am.

"THE COURT:    You'll waive time until that day?

"THE DEFENDANT:    Yes, ma'am.

"THE COURT:    8:30 across the hall in Department 8.

"THE DEFENDANT:    Thank you very much.

"THE COURT:    I show Mr. Lozano is on bail bond."

With that statement, the proceedings adjourned at 9:53 a.m.  The court reporter certified the transcript was "a full, true, and correct transcription [of her shorthand notes] of the proceedings had."

The preprinted "WAIVER OF DEFENDANT'S PERSONAL PRESENCE (977(c) Penal Code)" was dated May 23, 2022, and signed by Lozano and Attorney Washington. Under a line stating the waiver was accepted and ordered filed, Superior Court Judge Nancy A. Leo handwrote her signature and the date.  The section 977 waiver is relevant to determining the meaning of (1) the May 23, 2022 minute order and (2) what was said at the hearing.  Therefore, we quote its contents in full:

> "The undersigned defendant, having been advised of his right to be present at all stages of the proceedings, including but not limited to presentation of and arguments on questions of law, and to be confronted by and cross-examine all witnesses, hereby waives the right to be present at the hearing of any motion or other proceeding in this cause, including when the case is set for trial, when a continuance is ordered, and following is heard, when a motion for reduction of bail or for a personal recognizance release is heard, when a motion to reduce sentence is heard, and when questions of law are presented to or considered by the court.  The undersigned *defendant hereby requests the court to proceed during every absence of his which the court may permit pursuant to this waiver*, and hereby agrees that his interest will be *deemed represented at all times by the presence of his attorney the same as if the defendant himself were personally present in court*, and further agrees that notice of his attorney that his presence in court on a particular

4.

day at a particular time is required will be deemed notice to him of the requirement of his appearance at said time and place."**2**

The superior court minute order for the May 23, 2022 hearing was on a preprinted form that included a line stating: "**NEXT APPEARANCE DATE:** _____ **TIME:** _____ **AM / PM  DEPT:** _____ [box] **Def. ordered to appear** / **excused**." In completing the minute order, the clerk wrote "7-18-22" and "8:30" as the date and time of the next appearance, circled "**AM**," placed a slanted line in the box immediately before the phrase "**Def. ordered to appear** / **excused**," and circled the word "**appear**." Immediately above the phrase "**ordered to appear** / **excused**," the minute order had a box followed by "**PC 977 waiver filed**." The clerk placed a diagonal line through the box and circled the word "**filed**." To designate the nature of the next appearance, the clerk placed a diagonal line through the box appearing immediately before "PT," which we infer means pretrial.

*July 18, 2022 Hearing*

The July 18, 2022 pretrial hearing in Department 8 before Superior Court Judge Ricardo Cordova began as follows:

> "THE COURT:     We'll get on the record in People versus Steven Jay Lozano, case number 22-846. Mr. Lozano's on bail with a 977 on file; Mr. Washington representing him. [¶] Mr. Garcia, do you have this matter?
>
> "MR. GARCIA:     I do, Your Honor.
>
> "THE COURT:     Counsel, what is your request?
>
> "MR. WASHINGTON:     I guess we didn't discover the identities on 977. So --
>
> "MR. GARCIA:     I don't believe Mr. Lozano is here today.

---

**2**     The quoted contents are based on the form of waiver set forth in section 977, subdivision (b)(4). Although its wording is slightly different from the statute, Lozano's section 977 waiver form substantially complies with the statute. Neither side contests the validity of Lozano's waiver.

"THE COURT:        And I said he had a 977 on file.

"MR. GARCIA:        Oh, okay.

"MR. WASHINGTON:        He has a 977.

"THE COURT:        That was filed on 5/23.

"MR. WASHINGTON:        Yes.  So can I put it out two weeks, I guess?

"THE COURT:        Have you received discovery in this matter?

"MR. WASHINGTON:        No.

"THE COURT:        Mr. Garcia, what have  -- are you looking for the discovery status?

"MR. GARCIA:        I am, Your Honor."

The court and counsel discussed the status of the discovery before addressing the scheduling of the next in-court proceeding, an early case management conference.  The court set the conference for September 6, 2022, apparently for the purposes of confirming the discovery had been delivered to Mr. Washington or addressing any issues related to the discovery.  The court then asked if an offer had been conveyed, was informed it had, and concluded the hearing.

The minute order for the July 18, 2022 hearing was on a preprinted form different from the previous minute order.  All the entries on the form were typed.  In comparison, some of the entries on the May 23, 2022 minute order were handwritten.  "*PRETRIAL*" was entered after "Nature of Hearing."  The new form had a box followed by "*PC 977 appearance*" immediately above the line for information about the next appearance; the form no longer had a box followed by "**PC 977 waiver filed**."  The box before "*PC 977 appearance*" contained a typed "x," indicating Lozano's appearance at the July 18, 2022 hearing was through Attorney Washington pursuant to the section 977 waiver on file.  The entries for the date and time for the next appearance were "*09/06/2022*" and "*8:30AM*" and an "x" was typed before "Def. ordered *to appear*."

6.

The minute order for the September 6, 2022 case management conference indicates that neither the defendant nor his attorney were present and that the trial court had tried contacting counsel, left messages, and sent a Zoom link. Judge Cordova ordered the forfeiture of bail in open court based on defendant's failure to appear and issued a bench warrant. The next day, the clerk of court mailed Surety a notice of forfeiture in compliance with section 1305, subdivision (b)(1).

*Subsequent Proceedings*

Pursuant to a motion brought under section 1305.4, the trial court extended the initial appearance or exoneration period to October 7, 2023. In September 2023, Surety filed a motion to vacate forfeiture and exonerate bail. In October 2023, after an opposition and reply were filed, Superior Court Judge Robert B. Westbrook heard argument and took the matter under submission.

On December 4, 2023, Judge Westbrook signed and filed a 5-page order denying Surety's motion to vacate forfeiture and exonerate bail. The order stated (1) Judge Leo had not ordered defendant to personally appear at the July hearing; (2) the minute order for the May 23, 2022 hearing reflected that defendant was ordered to appear at the July hearing; and (3) as a result, the May 23, 2022 minute order conflicted with the reporter's transcript of the hearing. Judge Westbrook determined the reporter's transcript was entitled to greater credence than the minute order. Part of the court's rationale was that,"[g]iven the circumstances of this case, the defendant's [personal] appearance was not necessary to effectuate any purpose of the July 18th hearing."

On January 11, 2024, a summary judgment against Surety in the amount of $200,000 plus administrative costs and interest was filed. Surety filed a timely appeal.

In June 2024, after the record on appeal had been filed, this court issued an order directing the parties to complete a questionnaire containing 10 yes-or-no questions and attach it to the first brief they filed. The preface to the questionnaire stated Surety's

7.

counsel and the County of Stanislaus had been involved in at least three "other appeals raising the issue of whether a defendant was required to be present in court for a particular hearing and the underlying issues relating to the interpretation of [1] the superior court's minute order, which is on a preprinted form, and [2] the reporter's transcript of the hearing scheduling the court date that [Surety] contends the defendant was required to attend in person." The preface stated the questionnaire's purpose was "to ensure the parties address specific issues that are, or may be, steps in the interpretative process and may not have been addressed in briefing filed in earlier appeals."

## DISCUSSION

### I.     LEGAL PRINCIPLES

#### A.     Forfeiture of Bail

The forfeiture of bail and related proceedings are governed by sections 1305 through 1308. Section 1305, subdivision (a)(1) provides: "A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following: [¶] (A) Arraignment. [¶] (B) Trial. [¶] (C) Judgment. [¶] (D) *Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required.* [¶] (E) To surrender himself or herself in execution of the judgment after appeal."

Here, the July pretrial hearing was not an arraignment or trial and occurred before the pronouncement of judgment. Consequently, phrased in statutory terms, the question presented is whether "the defendant's presence in court [for the July hearing was] lawfully required" for purposes of section 1305, subdivision (a)(1)(D). The modifier "lawfully" is insignificant in this appeal because neither party suggests the court lacked the authority to require Lozano to be present at the July hearing. Thus, the question narrows to whether the court actually required Lozano's "presence in court." (§ 1305, subd. (a)(1)(D).)

8.

Under section 1305, the trial court is authorized to declare a forfeiture of bail only if (1) the defendant fails to appear when required and (2) there is no sufficient excuse for the nonappearance. (*Safety National*, *supra*, 62 Cal.4th at p. 710.) These two prerequisites are jurisdictional and, when satisfied, the court must declare a forfeiture *at that time*. (*Ibid*.) The legal consequence of failing to declare a forfeiture at that time is the loss of jurisdiction and, thus, any forfeiture the court declares later is invalid. (*Ibid*.) In this case, Surety contends the court lacked the jurisdiction to declare a forfeiture at the September case management conference because it was required to declare bail forfeited at the July hearing when Lozano was not present. If Surety is correct in asserting the court required Lozano to be present at the July hearing, it will win this appeal, the forfeiture will be vacated, and bail will be exonerated.

B.     The Right to be Present in Court

A criminal defendant has a federal and state constitutional right to be personally present in court for certain proceedings. (*People v. Flinner* (2020) 10 Cal.5th 686, 710.) That right is addressed by section 977, which provides in part:

> "(1) Except as provided in subdivision (c), in all cases in which a felony is charged, the accused shall be *physically present* at the arraignment, at the time of plea, during the preliminary hearing, during those portions of the trial when evidence is taken before the trier of fact, and at the time of the imposition of sentence. The accused shall be *physically or remotely present* at all other proceedings unless they waive their right to be physically or remotely present, with leave of court and with approval by defendant's counsel.

> "(2) The waiver of a defendant's right to be physically or remotely present may be in writing and filed with the court or, with the court's consent, may be entered personally by the defendant or by the defendant's counsel of record." (§ 977, subd. (b), italics added.)

The exception in subdivision (c) of section 977 relates to "criminal proceedings that may be conducted through the use of remote technology" when the defendant has waived the right to be physically present. (§ 977, subd. (c)(1)(A).) The trial court,

9.

however, retains the authority to "specifically direct the defendant, either personally or through counsel, to be physically present at any particular felony proceeding or portion thereof." (§ 977, subd. (c)(1)(B).)

Section 977 is relevant to whether the trial court actually required Lozano's "presence in court" (§ 1305, subd. (a)(1)(D)) because it demonstrates a defendant can appear (i.e., participate) in a court proceeding (1) by being physically present, (2) by being remotely present, or (3) through an attorney who is physically or remotely present. The latter two possibilities exist in this case because the court accepted Lozano's written waiver of the right to be personally present.

## II. INTERPRETATION OF THE MINUTE ORDER

The issue of whether the trial court actually required Lozano's presence in court for the July pretrial hearing requires us to interpret the minute order and reporter's transcript from the May 23, 2022 hearing. The interpretation of these documents raises several legal questions.

### A. General Rules of Law Governing Interpretation of the Minute Order

Our questionnaire's first question asked the parties whether the rules of laws that apply to written documents generally govern our determination of the meaning of the May 23, 2022 minute order. Surety asserted those rules apply, which effectively treats the minute order like an appellate opinion, court order or judgment. (See *V Lions Farming, LLC v. County of Kern* (2024) 100 Cal.App.5th 412, 423 (*V Lions*) [appellate opinion subject to the rules of construction applicable to any other writing]; *Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205 ["same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing"]; accord, *Verner v. Verner* (1978) 77 Cal.App.3d 718, 724.)

The People disagreed, asserting a minute order is not, in and of itself, a court order or judgment because the preparation and filing of a minute order is a ministerial act. (See

*Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1307 [clerk is a ministerial rather than judicial officer].) Thus, the People argue the rules applied to court orders and judgments do not apply to minute orders. For instance, clerical errors in a minute order may be corrected by amendment, but a judicial error in rendering a judgment may not be corrected by amendment. Also, the People contend that while extrinsic evidence is not always admissible to aid the interpretation of a written instrument, a minute order should always be read together with the reporter's transcript when a transcript is available. The People note that facially unambiguous minute orders are not always given controlling effect and, when the reporter's transcript and the minutes are conflicting, the determination of which controls requires "a consideration of the circumstances under which the proceedings were had." (*People v. Washington* (1949) 95 Cal.App.2d 454, 456.)

Before addressing the rules of interpretation applicable to the language in a minute order, we address the principle defining the relationship between a minute order of a hearing and the reporter's transcript of that hearing. In bail forfeiture cases involving an inconsistency between the minute order and the reporter's transcript, the Third District set forth the following principles:

> "Generally, when the record is in conflict, 'it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation]. Therefore[,] whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case.' (*In re Evans* (1945) 70 Cal.App.2d 213, 216, quoted with approval in *People v. Smith* (1983) 33 Cal.3d 596, 599.)" (*People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891, 900 (*Accredited '19*); accord, *People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 582, 586.)

We conclude the foregoing principles apply to this bail forfeiture matter and, therefore, when the clerk's minutes are in apparent conflict with the reporter's transcript, the apparent conflict should be harmonized if reasonably possible and, where it is not

reasonably possible, the part of the record that prevails must depend upon the circumstances of the case. We qualify "possible" with "reasonably" because it is implied in *Accredited '19* and is explicit in the rules of construction applied when the documents being interpreted are statutes. (See *State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955 [when statutory provisions appear in conflict, a court must, where reasonably possible, harmonize the statutes].)

These principles about the resolution of conflicts does not address the more basic question of how to determine the *meaning* of the two different parts of the record relevant to this appeal. The meaning, or potential meanings, of the minute order and reporter's transcript must be determined before a court can decide (1) if a conflict exists and (2) how to resolve any conflict. We conclude the meaning of the words of a minute order or a reporter's transcript is usually ascertained by applying the same rules of interpretation that apply to written documents generally. Under those rules, each document must receive an objectively reasonable interpretation—that is, its provisions must be read as a whole, must be viewed in light of the facts and issues then before the court, and must be considered in its proper context. (*V Lions*, *supra*, 100 Cal.App.5th at p. 423; see generally, Civ. Code, §§ 1641 [contract must be read as a whole], 1647 [contract may be explained by the circumstances under which it was made and the matter to which it relates]; Code Civ. Proc., § 1860 [proper construction of an instrument considers the circumstances under which it was made].)

B.     Ambiguity in the May 23, 2022 Minute Order

Under the general rules for interpreting written documents, the threshold question is whether the language used in the document is ambiguous. (*V Lions*, *supra*, 100 Cal.App.5th at p. 423.) " 'Ambiguous' means susceptible to more than one reasonable interpretation." (*Ibid*.) Generally, whether written language is ambiguous presents a question of law. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 (*Winet*).) As a question

12.

of law, it is subject to independent review on appeal. (*Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 619.)

### 1.    *Parties' Contentions*

Surety contends Lozano was "lawfully required" (§ 1305, subd. (a)(1)(D)) to personally appear in court at the July hearing because the minute order unambiguously ordered him to appear. Surety contends the line through the box before "**Def. ordered to appear** / **excused**" and the circling of the word "appear" clearly indicate Lozano's presence in court was ordered because the alternative of excusing the appearance was not chosen. Restating this argument, Surety asserts:  "The minutes of May 23, 2022, provided that the court could choose between ordering the defendant to 'appear', or be 'excused' from the July 18, 2022, hearing. The clerk's circling of the word 'appear' necessarily excluded the alternative word 'excused.' "  In effect, Surety contends the only reasonable interpretation of the minute order's phrase and its use of the words "appear" and "excused" is that Lozano was ordered to be personally present in court.

The People contend the phrase "**Def. ordered to appear**" is ambiguous because it "could mean either that the defendant was ordered to personally appear or that defendant was ordered to appear either in person or through counsel." The People contend the phrase must be considered in light of the entire minute order, including the phrase "**PC 977 waiver filed**" because once a section 977 waiver is filed, a felony defendant may appear personally or through counsel and, without a waiver, a felony defendant must appear personally.

### 2.    *Dictionary Definitions*

Our assessment of whether the phrase "**Def. ordered to appear**" is ambiguous includes a review of dictionary definitions of "appear" and "appearance." Courts may refer to dictionary definitions when attempting to ascertain the ordinary, usual meaning of a word. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122.)

Black's Law Dictionary (6th ed. 1990) defines the word "appear" to mean: "To be properly before a court; .…  Coming into court by a party to a suit, whether plaintiff or defendant.  See Appearance." (*Id*. at p. 97.)  "Appearance" is defined as "[a] coming into court as party to a suit, *either in person or by attorney*, whether as plaintiff or defendant." (*Ibid*., italics added.)  The definition states civil litigants "do not normally actually appear in person, but rather through their attorneys" and, "at many stages of criminal proceedings, particularly involving minor offenses, the defendant's attorney appears on his behalf." (*Ibid*.)

These dictionary definitions establish it is possible to interpret the word "appear" broadly to mean come into court in person or through an attorney.  They do not, however, establish whether the minute order used "appear" broadly or narrowly.  (See generally, *In re Marriage of Davis* (2015) 61 Cal.4th 846, 852, fn. 1 [while useful, dictionary definitions are not binding as to the meaning of statutory language].)  Consequently, our inquiry into ambiguity continues and we consider the minute order as a whole and consider its language in light of the facts and issues before the court and in the legal context of the proceedings being conducted.  (See *V Lions*, *supra*, 100 Cal.App.5th at p. 423; *Hancock Oil Co. v. Hopkins* (1944) 67 Cal.App.2d 218, 222 [courts "must … look to the instrument in which the word was used … in determining the sense in which it was used"].)

### 3. *Other Parts of the Minute Order*

The parties agree that this court should consider the phrase "**PC 977 waiver filed**" appearing in the line immediately above "**Def. ordered to appear**" in determining whether the latter phrase is ambiguous.  We concur.  Section 977 addresses (1) when a felony defendant must be physically present in court, (2) when the defendant must be either physically or remotely present, and (3) when neither type of presence is required because a waiver of the right to be present has been accepted and filed by the court.

14.

When a defendant's section 977 waiver has been filed, it creates the possibility that the defendant may "appear" for certain court proceedings through an attorney. In comparison, if a defendant has not executed a section 977 waiver of personal presence, his or her failure to be present at a scheduled pretrial proceeding requires the court to declare bail forfeited. (*Safety National*, *supra*, 62 Cal.4th at pp. 707–708.) Stated another way, when a section 977 waiver has not been filed, the only way for a defendant to "appear" at a proceeding is to be personally present. Consequently, we conclude the minute order's reference to whether a section 977 waiver was filed is relevant to interpreting the minute order's statement that Lozano was ordered to appear.

Another part of the May 23, 2022 minute order relevant to determining whether the minute order is ambiguous is the entry identifying the type of proceeding scheduled for July. That information is relevant because a felony defendant is required by statute to be present, physically or remotely, for certain proceedings. (See § 977, subd. (b)(1); *Safety National*, *supra*, 62 Cal.4th at p. 716 [five proceedings where defendant's presence is mandatory are arraignment, plea, preliminary hearing, trial, and sentencing].) Here, the minute order indicated the proceeding scheduled for July was a pretrial hearing. Consequently, Lozano's presence in court was not mandatory under section 977, subdivision (b)(1).

### 4. Extrinsic Evidence

Next, we address the role of extrinsic evidence in the analysis of whether an ambiguity exists. In the context of contract law, courts provisionally receive all credible extrinsic evidence in determining whether the language is reasonably susceptible to the interpretation urged by a party. (*Winet*, *supra*, 4 Cal.App.4th at p. 1165.) Similarly, in the context of statutory construction, a claim a statute contains a latent ambiguity requires a provisional examination of the extrinsic matters to decide whether the claim is tenable. (*Davis Boat Manufacturing-Nordic, Inc. v. Smith* (2023) 95 Cal.App.5th 660, 673,

quoting *Siskiyou County Farm Bureau v. Dept. of Fish & Wildlife* (2015) 237 Cal.App.4th 411, 432; see *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1496 [extrinsic aids for statutory construction include legislative history and contemporaneous administrative construction].)  We conclude these principles about extrinsic materials apply to determining whether a minute order is ambiguous.

Consequently, we conclude the contents of the section 977 waiver itself is extrinsic evidence that should be provisionally examined in determining whether the minute order is ambiguous.  (See *Winet*, *supra*, 4 Cal.App.4th at p. 1165 [use of extrinsic evidence to determine whether a document's language is ambiguous].)  In this case, the court accepted Lozano's section 977 waiver *before* it scheduled the next hearing for July 18, 2022.  As a result, the waiver was part of the context in which the scheduling order was made.  The written waiver stated the defendant "hereby waives the right to be present at the hearing of any motion or other proceeding in this cause" and "hereby requests the court to proceed during every absence of his which the court may permit pursuant to this waiver."  Thus, Lozano waived his right to be personally present at the July hearing and also requested the court to permit his absence at that hearing.

Other extrinsic evidence that is part of our provisional examination include the minute order and reporter's transcript from the July hearing where Lozano was not personally present.  The reporter's transcript shows the court and counsel discussed Lozano's absence and the fact he had a section 977 waiver on file.  The July 18, 2022 minute order contained a typed "x" in the box before "*PC 977 appearance*," which indicated the clerk believed Lozano appeared at the hearing through Attorney Washington pursuant to the section 977 waiver.

5. *"Appear" is Ambiguous*

Based on the contents of the May 23, 2022 minute order as a whole, the extrinsic evidence provisionally examined, and the legal framework established by section 977, we

16.

conclude the minute order's phrase "**Def. ordered to appear**" is ambiguous under the circumstances of this case. It is reasonably susceptible to the interpretation that the court required Lozano to be personally (i.e., physically or remotely) present in court for the July hearing. Alternatively, it could mean the court gave Lozano the option of being personally present in court or appearing through an attorney who was physically or remotely present in court. In short, the minute order does not clearly and precisely state what the trial court ordered.

In concluding an ambiguity exists, we reject Surety's argument that the clerk's circling of "appear" instead of "excused" eliminates the possibility that Lozano was permitted to appear through his attorney. The word "excused" is itself ambiguous in this context. When the proceeding is not one for which a defendant's presence is mandatory, the issue of a "sufficient excuse" arises only "if the defendant's presence is lawfully required" and then fails to attend the proceeding. (§ 1305, subd. (a)(1)(D).) When narrowly interpreted, the term "sufficient excuse" does not encompass situations where the defendant's personal presence was not required in the first place. In other words, a defendant who is not required to be in court does not need an "excuse" for being absent. We recognize this is not the sole reasonable interpretation of "excuse" because it could be used colloquially to mean any reason for the personal absence of the defendant, including reliance on a section 977 waiver and the absence of a specific order requiring personal presence. In sum, the term "excuse" is ambiguous in the bail forfeiture context and its inclusion on the preprinted form did not render the word "appear" unambiguous in the particular circumstances of this case.

C.    The Presumption a Duty Was Regularly Performed

When language is determined to be ambiguous, the second step of the interpretive process is to determine the meaning of the ambiguous language—that is, adopt an ultimate construction of the language. (See *Winet*, *supra*, 4 Cal.App.4th at p. 1165.)

Before beginning the second step, we address the legal question regarding the presumption in Evidence Code section 664. (See *People v. Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 973 [presumption applied to dispute over whether the clerk mailed the notice of forfeiture].)

Evidence Code section 664 provides in part: "It is presumed that official duty has been regularly performed." This presumption affects the burden of proof, not the burden of producing evidence. (See Evid. Code, §§ 603 [presumption affecting the burden of proof defined], 604 [effect of such presumptions], 660.) Our questionnaire asked the parties: "Does the presumption 'that official duty has been regularly performed' (Evid. Code, § 664) apply to the clerk of the superior court's completion of the minute order from the May 23, 2022 hearing?" We cited *Wutchumna Water Co. v. Superior Court* (1932) 215 Cal. 734, which stated: "The presumption is that the minute order correctly records the judgment of the court." (*Id*. at p. 737.) Surety answered the question "Yes" and the People answered "No."

In *Fergus v. Songer* (2007) 150 Cal.App.4th 552, the court concluded Evidence Code section 664's presumption applies to the duties of clerks of court. (*Id*. at p. 565; see *People v. Duran* (2002) 97 Cal.App.4th 1448, 1461–1462, fn. 5 ["presumption applies to the actions of trial judges and court clerks"].) Addressing an argument that there was no evidence the minute order in question had ever been entered in the permanent minutes of the trial court, the court presumed the deputy clerk had fulfilled his or her duty and entered the trial court's order forthwith. (*Fergus*, at pp 564–565.)

Here, we conclude the presumption that an official duty has been regularly performed applies to the acts of a court clerk in completing a minute order, but also conclude it has little relevance to the threshold inquiry into the existence of an ambiguity. Presuming the May 23, 2022 minute order is correct does not establish that there is only one reasonable interpretation of the phrase "**Def. ordered to appear**." Furthermore, even if we were to conclude a clerk regularly performing the duty of completing a minute

18.

order would not use ambiguous language, the presumption would not aid us in determining whether Lozano was ordered to be personally present or, alternatively, Lozano was allowed to appear personally or through his attorney.

In contrast, if the presumption is applied to the subsequent July minute order and the "x" typed in the box before "*PC 977 appearance*," the July minute order is evidence that Lozano was not ordered to be personally present at the July hearing, but was allowed to appear through Attorney Washington pursuant to the section 977 waiver on file. Because the parties have not briefed this point, our ultimate resolution of the ambiguity in the May 23, 2022 minute order does not rely on applying the presumption that an official duty has been regularly performed to the July minute order.

D.      Resolving the Ambiguity

We next consider how to resolve the ambiguity in the minute order's phrase "**Def. ordered to appear**." We turn to the reporter's transcript of the May 23, 2022 hearing to determine whether Judge Leo ordered Lozano to be personally present at the July pretrial hearing.

Our review of that transcript is guided by the Supreme Court's statement that "a defendant's presence may be deemed 'lawfully required' *when a specific court order commands his or her appearance at a date and time certain* [citations], or when a defendant has actual notice of a mandatory appearance—even without a court order—because he or she was present when the date and time of the appearance were set [citation]." (*Safety National*, *supra*, 62 Cal.4th at p. 710, italics added.) As described earlier, Lozano's presence at the July pretrial hearing was not mandatory. (See § 977, subd. (b)(1); *Safety National*, at p. 716 [five mandatory proceedings are arraignment, plea, preliminary hearing, trial, and sentencing].) Consequently, we consider the meaning of the italicized language "when a specific court order commands his or her appearance at a date and time certain." (*Safety National*, at p. 710.)

19.

In *Safety National*, the defendant had not signed a written waiver of his right to be present at a pretrial hearing. (*Safety National*, *supra*, 62 Cal.4th at p. 717.) When the defendant was not present at the hearing, his attorney informed the court she had been unsuccessful in contacting him that morning or the previous evening. (*Id*. at p. 708.) The court ordered bail forfeited. Later, the surety moved to vacate the forfeiture, arguing the court lacked the jurisdiction because the defendant had not been ordered to appear at the hearing and his presence was not required by law. The Supreme Court rejected this argument, concluding section 977, subdivision (b)(1) requires a felony defendant to "be present at five specified proceedings and at 'all other proceedings' unless he or she has properly executed a written waiver" and, therefore, the defendant had been "lawfully required" to appear at the hearing for purposes of section 1305, subdivision (a). (*Safety National*, at pp. 707–708.) A circumstance important to interpreting *Safety National* is that a section 977 waiver had not been filed and, in that procedural posture, the Supreme Court's discussion did not need to distinguish between the defendant's appearance through counsel and his appearance by being present in court. Thus, the Supreme Court used the words "appear" and "appearance" to mean the defendant's personal presence in court.

Based on the circumstances of the case, we conclude the Supreme Court's reference to "when a specific court order commands his or her *appearance* at a date and time certain" (*Safety National*, *supra*, 62 Cal.4th at p. 710, italics added) should be interpreted to mean the defendant's personal presence in court in cases where the defendant has a properly executed waiver on file. Therefore, when a defendant has filed a section 977 waiver, the question is whether "a specific court order commands his or her [presence in court] at a date and time certain." (*Safety National*, at p. 710.) Consequently, we consider whether the reporter's transcript shows Judge Leo issued a specific order commanding Lozano's personal presence at the July hearing.

The reporter's transcript of the oral proceedings at the May 23, 2022 hearing are quoted in full earlier in this opinion. After the court accepted Lozano's section 977 waiver, it scheduled the pretrial hearing for July 18, 2022. The court did not explicitly direct Lozano to personally appear at the hearing. Based on our interpretation of *Safety National*, we conclude the absence of an explicit order meant Lozano could rely on the section 977 waiver and, thus, was not impliedly commanded to be personally present at the July hearing. The fact the trial court asked Lozano if the July 18, 2022 date was okay with him does not necessarily imply the court was ordering him to be personally present. Rather, it simply reflects the court's recognition of the possibility that Lozano might choose to exercise his right to be present.

The foregoing interpretation of the reporter's transcript resolves the ambiguity in the minute order. We conclude the phrase "**Def. ordered to appear**" means Lozano was ordered to appear at the July hearing by either being personally present or through Attorney Washington. Consequently, there is no irreconcilable conflict between the minute order and the reporter's transcript.

E.     An Unreported Order

Surety contends the fact that the reporter's transcript does not contain a court order for Lozano to be present at the July hearing "does not invalidate the court order reflected in the minutes." As background for this argument, Surety notes the statutory requirement that a bail forfeiture order be made "in open court." (§ 1305, subd. (a)(1).) Surety further notes the statute does not contain an in-open-court requirement for an order directing a defendant to be present in court for a hearing (see § 977, subd. (b)). Surety contends the absence of such a requirement creates the possibility that a trial court could make an order directing the defendant to be present and the order would not be reflected in the reporter's transcript. Surety also contends the broad discretion given to trial courts in felony cases is consistent with the validity of an order for the defendant to appear

21.

being in the court's written minutes but not in the reporter's transcript.  Surety argues (1) Lozano and his attorney had access to the minute order, (2) nothing in the record contradicts the minute order's statement that Lozano was ordered to appear at the July hearing, and (3) the fact the court confirmed Lozano's availability on July 18, 2022, shows he was required to be present.

We reject Surety's argument that the trial court made an order for Lozano to be personally present that was not reflected in the reporter's transcript.  The court reporter certified the transcript was "full, true, and correct."  The use of the word "full" supports the inference that there were no orders made by Judge Leo that did not appear in the reporter's transcript.[3]  Based on the totality of the circumstances set forth in the appellate record, we conclude Surety's inference that Judge Leo made an unreported order for Lozano to be personally present at the July hearing is outweighed by the inferences that Judge Leo allowed Lozano to rely on his section 977 waiver and appear through counsel at the July hearing.

F.     Conclusion

The trial court allowed Lozano to appear at the July pretrial hearing through his attorney.  As a result, Lozano's personal absence at that hearing did not require the trial court to declare his bail forfeited.  When Lozano and his attorney were not physically or remotely present at the September conference, the trial court had the jurisdiction to declare a forfeiture of bail pursuant to section 1305, subdivision (a)(1)(D).  Based on the forfeiture declaration in open court at the September conference, summary judgment was

---

[3]     Code of Civil Procedure section 273, subdivision (a) provides that a certified reporter's transcript "is prima facie evidence of that … proceeding[]."  The parties have not briefed whether this provision applies to a proceeding conducted under the Penal Code.  The statute, however, has been cited by the Supreme Court in a criminal case. (See *People v. Matula* (1959) 52 Cal.2d 591, 600 ["certified transcript of a prior judicial proceeding is prima facie evidence of the testimony and proceedings it recites"].)

properly entered against Surety.  Consequently, the trial court properly denied Surety's motion to vacate forfeiture and exonerate bail.

## DISPOSITION

The summary judgment and the order denying Surety's motion to vacate forfeiture and exonerate bail are affirmed.  Respondent shall recover its costs on appeal.


DE SANTOS, J.

WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.